[No. 9542–1–I.   Division One.   June 28, 1982.]

THE STATE OF WASHINGTON, *Respondent*, v. LARRY
RICHARD JONES, *Appellant*.

*Jon Zulauf* of *Eastside Defender Association, McKay & Gaitan,* and *Jose E. Gaitan,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *James Lobsenz, Deputy,* for respondent.

JAMES, J.—Defendant Larry Jones appeals his sentencing to Western State Hospital following his acquittal, by reason of insanity, of second degree assault. We affirm.

Jones is a former University of Washington mathematics graduate student. In 1979, Jones left school to work on a project in San Diego relating to the Northern Tier pipeline. During his work, Jones discovered what he believed to be falsified data prepared for a cost analysis of the project. After becoming convinced that company officials desired to kill him because of his discovery, he contacted the Federal Bureau of Investigation. He subsequently returned to Seattle.

At about 8:30 on the evening of March 2, 1980, Jones left his West Seattle home with the intent of hitchhiking to the Canadian border. He carried a gun for personal protection and planned to seek landed immigrant status, which he equated with "political asylum," at the border. Jones received a ride to the University District and was let off near the freeway. From there, he walked onto the campus, hoping to obtain a ride as far as Bellingham.

After walking about the campus, Jones sat down on a university–owned Cushman scooter parked in a university

parking lot and waited for a ride. He began rocking the scooter back and forth and "fooling" with the brake. A campus plainclothes police officer driving an unmarked vehicle observed Jones in the scooter and stopped.

Jones testified that the man (who he did not know was an officer) asked him "cordially" what he was doing. Jones said nothing and started to get out of the scooter and then heard the officer call out that the scooter had started to roll. Jones returned to set the brake and was sitting in the scooter when the officer ordered him to "[c]ome over here." Jones demanded to know who he was, but the officer neither then nor later identified himself. The officer got out of his car; Jones "scrambled" out of the scooter and observed that the officer had a gun. Jones then showed his gun. The officer looked at Jones' gun and began to reach for his own gun. Jones pointed his gun at the officer, who put his hands up. Jones then searched the officer and attempted to handcuff him with the officer's handcuffs. A struggle ensued and two shots were fired, but neither was injured. Additional police officers soon arrived and arrested Jones.

Although the officer's testimony is substantially in accord with Jones', it differs in certain material respects. The officer testified Jones said nothing when he asked, "[H]ow are you doin'?". Instead, Jones stepped out of the scooter and began an unrequested approach toward the officer. He came within 5 feet of the officer's car when the officer called out that the scooter had begun to roll. The officer, holding a portable radio in one hand, got out of his car while Jones was setting the brake. Jones, who had said nothing, then turned and drew his gun. The officer had not reached for his own gun. The officer did testify he had not identified himself as a police officer.

Jones was initially sent to Western State Hospital for observation and evaluation. Prior to trial, a hearing was held to determine whether Jones was competent to stand trial and whether the State's motion to impose an insanity plea should be granted. Jones and his counsel were present. Jones was questioned by his counsel and by the trial judge

concerning his understanding of the proceedings. The trial judge also had before him a report, signed by three Western State doctors, advising that Jones was insane at the time of his action, but was competent to stand trial. Jones was therein diagnosed as suffering "[s]chizophrenia, chronic paranoid type." It was also reported that Jones could generally converse in a rational manner, but could not explain his conduct at the time of the incident, and that, upon arrival, Jones was "alert and oriented, but very assaultive, belligerent and uncooperative." One of the doctors testified at the hearing. The trial judge found Jones competent to stand trial. After further argument by counsel, and over defense objections, the trial judge directed that a plea of not guilty by reason of insanity be entered on Jones' behalf. The ruling was based upon the following conclusions:

There was a substantial possibility that the defendant was legally insane at the time of the alleged act.

Conclusion of law 1.

[There] was a substantial danger that failure of the court to enter the insanity plea on behalf of the defendant would result in the conviction of defendant notwithstanding strong evidence that he was not legally responsible for his acts due to insanity.

Conclusion of law 2.

Due to the strong possibility that defendant was mentally not responsible for the alleged criminal act, the court was compelled to exercise its inherent power to enter an insanity plea on defendant's behalf. *State v. Smith*, 88 Wn.2d 639, 643 (1977).

Conclusion of law 3. The trial judge also appointed amicus counsel, based upon the following conclusions:

The deputy prosecuting attorney has indicated that he will ask the jury to return a verdict of not guilty by reason of insanity as the State's "first choice" verdict, but that he will request the return of a guilty verdict as a "second choice". Due to the deputy prosecutor's divided appeal to the jury, the court concludes that the defendant's constitutional rights would not be fully protected by the evidence and argument which the State intends to

present.

Conclusion of law 4.

> Defense counsel . . . having properly advised the court that he intends to abide by his client's wishes and to vigorously oppose any suggestion of defendant's insanity, the court concludes that defendant's constitutional rights are not fully protected without appointment of amicus counsel.

Conclusion of law 5.

The jury found Jones not guilty by reason of insanity, and made the following findings upon the special verdict form authorized by RCW 10.77.040:

> (3) If [you find defendant was insane at the time of the act charged], is the defendant a substantial danger to other persons unless kept under further control by the court or other persons or institutions?
> [Answer: Yes]
> (4) If [you find defendant was insane], does the defendant present a substantial likelihood of committing felonious acts jeopardizing public safety or security unless kept under further control by the court or other persons or institutions?
> [Answer: No]
> (5) If your answer to either No. 3 or No. 4 is "yes," is it in the best interests of the defendant and others that the defendant be placed in treatment that is less restrictive than detention in a state mental hospital?
> [Answer: Yes]

The trial judge thereafter sentenced Jones to confinement in Western State Hospital.

Jones first contends the trial judge erred in entering a plea of not guilty by reason of insanity on his behalf and over his objection. We do not agree.

■ A trial judge possesses "inherent power to impose the insanity defense sua sponte over objection of defendant and his counsel." *State v. Smith,* 88 Wn.2d 639, 642–43, 564 P.2d 1154 (1977). This power arises from the trial judge's duty to uphold the state and federal constitutions, which preclude the conviction of an insane defendant, *State v. Strasburg,* 60 Wash. 106, 110 P. 1020 (1910), and

to raise "'matters which may significantly promote a just determination of the trial.'" *State v. Smith, supra* at 644, quoting *ABA Standards Relating to the Function of the Trial Judge,* Std. 1.1(a), at 7 (Approved Draft, 1972).

Jones argues that his case is factually distinguishable from *Smith*: that Smith was obviously less competent than he; that the peculiar facts in *Smith* and Smith's demeanor left no doubt that he was insane when the incident occurred and that an insanity defense would prevail at trial; and that there was no viable defense in *Smith* except insanity. We do not agree.

A trial judge can best determine a defendant's *competency to stand trial* because he can observe the defendant's behavior and demeanor. *State v. Hanson,* 20 Wn. App. 579, 581 P.2d 589 (1978). A trial judge is in the best position to decide whether a particular defendant is more competent or less competent than Smith. Indeed, both Smith and Jones were found competent to stand trial. Although both counsel stipulated to Smith's competency, they did so on the basis of expert medical opinion comparable to that presented in this case.

Moreover, a finding of competency to stand trial does not settle the question of whether a defendant was sane at the time of his alleged criminal act, for "[t]he test for a finding of not guilty by reason of insanity and the test for a finding of incompetency to stand trial are not the same." *State v. Tate,* 74 Wn.2d 261, 264, 444 P.2d 150 (1968). A defendant is competent to stand trial if he is able to testify, to understand the nature of the charges, to comprehend the mechanics or consequences of a trial, and to assist and confer with his attorney, *State v. Maryott,* 6 Wn. App. 96, 492 P.2d 239 (1971), concerning such matters as recalling facts and identifying witnesses. 21 Am. Jur. 2d *Criminal Law* § 96 (1981).

> This standard [for trial competency] is designed to indicate whether the accused knows enough about the facts of the case to relate them coherently to his or her attorney and to understand the nature of the proceedings. It

is not intended to measure whether the defendant is also capable of making intelligent decisions on important matters relating to the defense.

*Frendak v. United States,* 408 A.2d 364, 379 (D.C. App. 1979) (Ferren, J.).

The peculiarity of facts in a given case may appear obvious.[1] The peculiarity of facts in another case may be gleaned from all of the evidence including doctors' reports and in-court observation of the defendant. The outward peculiarity of the facts or bizarre nature of the crime cannot be determinative of whether an insanity plea should be entered. *United States v. Wright,* 627 F.2d 1300 (D.C. Cir. 1980).

■ An alternative defense asserted by a defendant may justify not entering an insanity plea, *e.g., Patton v. United States,* 403 F.2d 923 (D.C. Cir. 1968) (alibi), or it may be "useful only in revealing the defense of insanity." *State v. Smith, supra* at 645 (invasion of privacy and kidnapping). Jones' asserted defense (self-defense) occupies an intermediate point on this scale. Self-defense precludes criminal liability when reasonable force is offered, attempted or used by a defendant who, in light of all the facts and circumstances as they appear to him, reasonably believes himself to be in danger. This test focuses upon the defendant's subjective impressions. *State v. Painter,* 27 Wn. App. 708, 620 P.2d 1001 (1980). To the extent those subjective impressions are influenced by insanity, perhaps manifested as "schizophrenia, chronic paranoid type," the reasonableness of the defendant's belief that he is in danger is challenged. Such a defense should not preclude entry of an otherwise appropriate insanity plea.

Jones contends further that imposition of an insanity

---

[1]In *State v. Smith,* 88 Wn.2d 639, 641, 564 P.2d 1154 (1977), "According to defendant an elderly woman sitting near him [on a train] was invading his privacy by using 'ESP' and attempting to kidnap him. As a result, defendant forced the woman to the aisle floor and threatened her with the pool cue he was carrying. When three train employees rushed into the car to quell the fracas, defendant beat the woman about the head and arms until he was subdued."

plea conflicts with a defendant's right to make fundamental decisions concerning the conduct of his case, including entering a plea, contrary to *North Carolina v. Alford,* 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970), and to represent himself, contrary to *Faretta v. California,* 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975). We do not agree.

This question has been considered in several recent decisions. *United States v. Wright, supra; State v. Khan,* 175 N.J. Super. 72, 417 A.2d 585 (1980); *Frendak v. United States, supra.* Our Supreme Court was aware of the trial judge's dilemma in such situations, stating in *State v. Smith, supra* at page 643:

> On the one hand [the trial judge] could not take unwarranted liberties with the manner in which a competent defendant chose to conduct his defense, including his choice of plea.

But,

> [g]iven these competing interests [between a defendant's control of his case and permitting the conviction of an insane defendant], the trial court was correct in choosing the course which would uphold the constitution and fulfill his obligation.

*State v. Smith, supra* at 643. We find the reasoning of *United States v. Wright, supra* at 1309–12 persuasive, and agree with that court that proper entry of an insanity plea over the defendant's objection does not violate the constitutional principles enunciated in either *Alford* or *Faretta.*

*State v. Smith* does not expressly hold that imposition of an insanity defense is a matter within the sound discretion of the trial judge, reviewable for abuse of discretion. But *Whalem v. United States,* 346 F.2d 812 (D.C. Cir.), *cert. denied,* 382 U.S. 862, 15 L. Ed. 2d 100, 86 S. Ct. 124 (1965), cited by our Supreme Court with approval in *Smith,* so holds. We observe that the trial judge's duty to choose between "competing interests" in upholding the constitution and permitting a competent defendant to conduct his defense in each specific case, *State v. Smith, supra*

at 643, necessarily entails a grant of sufficient discretion to make this choice. Appellate courts which lack a trial judge's opportunity to observe and hear the defendant, as well as any experts who testify, cannot make such determinations with a comparable degree of certainty. As stated in *United States v. Wright, supra* at page 1307:

> [T]he assessment of grounds for interposing the insanity defense is so factbound, so dependent on nuances of experts['] credibility and the defendant's presentation of himself, that the familiarity of the trial court is central to a sound decision.

(Footnote omitted.) We hold that the determination of whether an insanity plea should be entered over the objections of a defendant and his counsel is a matter within the sound discretion of the trial judge, but as to which the record on appeal must indicate the relevant factors considered in making the determination. This holding is consistent with our courts' reliance upon the trial judge's sound discretion in prior cases raising questions relating to pleas of an allegedly insane defendant. *See State v. Johnston,* 84 Wn.2d 572, 527 P.2d 1310 (1974); *State v. Kolocotronis,* 73 Wn.2d 92, 436 P.2d 774 (1968); *State v. Dodd,* 70 Wn.2d 513, 424 P.2d 302 (1967). Our review of the record here persuades us the trial judge did not abuse his discretion.

Jones next contends the trial judge erred in appointing a second defense counsel to present the insanity defense. We do not agree.

■ It would be unreasonable to permit the trial judge to impose an insanity plea, yet preclude effective presentation of evidence in support of that plea. When neither the defendant's counsel nor the prosecutor can be expected to adduce such evidence, the appointment of amicus counsel to do so is not only appropriate, but is imperative.

Jones also contends the trial judge erred by failing to grant a bifurcated trial on the insanity and self–defense issues in order to prevent a fundamentally unfair trial in which the evidence presented by amicus counsel undercuts the evidence presented by defendant's own counsel. We do

not agree.

In general, whether a bifurcated trial should be granted when an insanity plea and an alternative plea are entered is a matter within the sound discretion of the trial judge. *E.g., Holmes v. United States,* 363 F.2d 281 (D.C. Cir. 1966); *State v. Boyd,* 280 S.E.2d 669 (W. Va. 1981). Substantial prejudice to a defendant may result from a simultaneous trial on pleas of insanity and not guilty. *E.g., Holmes v. United States, supra.* On the other hand, evidence relating to insanity may not be easily separable from other evidence bearing upon the defendant's guilt. Limiting introduction of evidence bearing upon the accused's state of mind in the first stage of a bifurcated proceeding to such evidence as does not lend support to the insanity defense may deny to the jury evidence necessary to determine if the defendant committed the crime charged. *State v. Shaw,* 106 Ariz. 103, 471 P.2d 715 (1970), *cert. denied,* 400 U.S. 1009, 27 L. Ed. 2d 622, 91 S. Ct. 569 (1971).

Here, there was a significant overlap between evidence relevant to the insanity and self–defense pleas. The trial judge, after hearing argument and carefully considering the bifurcation issue, declined to order a bifurcated trial and instead ruled that evidence relevant to the insanity defense would be admitted following presentation of defense witnesses in order to rebut evidence of self–defense. Under these circumstances, and absent specific statutory authorization for a bifurcated trial, we find no abuse of discretion.

Jones next contends the trial judge's failure to advise him as to the consequences of a plea of not guilty by reason of insanity deprived him of due process of law. We do not agree.

The purpose of requiring advisement of the consequences of a guilty plea is to determine if the plea "was intelligently and voluntarily made, with knowledge of its consequences." *Wood v. Morris,* 87 Wn.2d 501, 508, 554 P.2d 1032 (1976). An insanity plea entered over the objections of the defendant and his counsel pursuant to *State v. Smith* cannot be voluntary, and whether or not the defend-

ant would have chosen to enter such a plea if more fully advised of its consequences is irrelevant. *Cf. State v. Brasel,* 28 Wn. App. 303, 623 P.2d 696 (1981) (a defendant who moves for an insanity acquittal pursuant to RCW 10.77.080 must be shown to have understood the nature of the charges and the consequences of his motion).

Jones next contends the trial judge acted contrary to the provisions of RCW 10.77.110 by sentencing him to Western State. RCW 10.77.110 provides:

> ■ If a defendant is acquitted of a felony by reason of insanity, and it is found that he is not a substantial danger to other persons, or does not present a substantial likelihood of committing felonious acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions, the court shall direct his final discharge. [2] If it is found that such defendant is a substantial danger to himself or others and in need of control by the court or other persons or institutions, the court shall order his hospitalization, or any appropriate alternative treatment less restrictive than detention in a state mental hospital, pursuant to the terms of this chapter. [3] If it is found that such defendant is not a substantial danger to other persons, or does not present a substantial likelihood of committing felonious acts jeopardizing public safety or security, but that he is in need of control by the court or other persons or institutions, the court shall direct his conditional release.[2]

(Sentence numbering ours.) He argues that because the jury found he did not present a "substantial likelihood of committing felonious acts jeopardizing public safety or security" (interrogatory 4), although finding he should be kept under the control of the court (see interrogatories 3 and 5), sentence 3 of RCW 10.77.110 applies and requires

---

[2]The clause, "*unless* kept under further control by the court" (italics ours), literally renders sentence 1 applicable to a defendant who is not a danger to others unless he is kept under the control of the court, suggesting that it is the court's control which renders him dangerous. This appears to be the inadvertent and bizarre result of automatically including the language from the jury verdict form authorized by RCW 10.77.040 in RCW 10.77.110.

his conditional release.

The State responds that RCW 10.77.110, as written, is internally contradictory and requires judicial construction in order to permit its application consistent with legislative intent. The State argues that literal application of this statute would permit final discharge pursuant to sentence 1 (because the jury found Jones did not present a substantial likelihood of committing felonies unless kept under court control), hospitalization pursuant to sentence 2 (because the jury found Jones was a substantial danger to others), as well as conditional release pursuant to sentence 3 under Jones' theory. The State's position is that the alternative clauses of sentences 1 and 3 should be read as if they were conjoined by "and" rather than "or". Thus, a defendant found not dangerous to others and not likely to commit felonies would be discharged pursuant to sentence 1. A defendant found dangerous to others and in need of control by the court could be hospitalized or otherwise treated pursuant to sentence 2. A defendant who is not dangerous to others and not likely to commit felonies but requires control by the court would be conditionally released pursuant to sentence 3. The State argues that the Legislature clearly intended that hospitalization should be an alternative if the defendant is dangerous to others, but that the defendant's need for treatment, without more, does not justify detention in a state mental hospital. Thus construed, sentences 2 and 3 serve this legislative purpose.

Jones responds that RCW 10.77.110 is not ambiguous. He contends that the Legislature intended the jury to decide, first, if defendant would be a substantial danger unless he is controlled by the court, and, second, if a defendant would be such a danger as to commit felonies unless controlled by the court. He argues that only if both questions are answered affirmatively does the statute authorize commitment to a state mental hospital.

■ If the Legislature fails to provide for a particular eventuality, the courts cannot read into a statute language which the Legislature has omitted, whether intentionally or

inadvertently. *State v. Martin,* 94 Wn.2d 1, 614 P.2d 164 (1980); *Automobile Drivers Local 882 v. Department of Retirement Sys.,* 92 Wn.2d 415, 598 P.2d 379 (1979). But if the literal language of a statute is inconsistent with obvious legislative objective or policy, the spirit or intent of the law takes precedence over the literal words, *Janovich v. Herron,* 91 Wn.2d 767, 592 P.2d 1096 (1979), and the statute may be construed in a manner consistent with the manifest legislative policy. *State v. Brasel, supra.* Ordinarily, the word "or" is not construed as meaning "and," although these terms are sometimes used interchangeably. *State v. Tiffany,* 44 Wash. 602, 87 P. 932 (1906). *See generally* 73 Am. Jur. 2d *Statutes* § 298 (1974). The Court of Appeals has, however, noted the existence of drafting errors in RCW 10.77.110, which, if applied literally, would frustrate the legislative purpose. *State v. Brasel, supra.*

We agree with the State's contention that RCW 10.77-.110, as written, is internally inconsistent. Nevertheless, we cannot construe RCW 10.77.110 in a manner which disregards the plain words of the statute unless an obvious legislative policy or purpose consistent with such a construction is apparent.

To determine the legislative purpose, the statutory scheme as a whole must be considered. *Burlington N., Inc. v. Johnston,* 89 Wn.2d 321, 572 P.2d 1085 (1977). Consequently, we turn first to other provisions of RCW 10.77. A "criminally insane" person is defined as

any person who has been acquitted of a crime charged by reason of insanity, and thereupon found to be a substantial danger to other persons *or* to present a substantial likelihood of committing felonious acts jeopardizing public safety or security unless kept under further control by the court or other persons or institutions.

(Italics ours.) RCW 10.77.010(1). The definition thus includes criminal defendants who pose *either* danger. If a defendant is conditionally released following an insanity acquittal, but fails to adhere to the terms of his release,

and because of that failure he has become a substantial

danger to other persons, *or* presents a substantial likelihood of committing felonious acts jeopardizing public safety or security, the court or secretary may order that the conditionally released person be apprehended . . .

(Italics ours.) RCW 10.77.190(2). Again, a defendant who poses *either* danger is subject to the statutory provisions.

The entire sequence of statutes relating to the same subject matter may be indicative of legislative purpose. *Amburn v. Daly*, 81 Wn.2d 241, 501 P.2d 178 (1972). Therefore, we turn next to the legislative history of the provisions of RCW 10.77, which were originally enacted in 1973. Laws of 1973, 1st Ex. Sess., ch. 117, § 4, p. 797 and § 11, p. 801. Under the 1973 act, juries were to consider if a defendant acquitted by reason of insanity was "a substantial danger to himself or others and in need of control by the court or other persons or institutions". Laws of 1973, 1st Ex. Sess., ch. 117, § 11, p. 801. The sentencing alternatives provided by the 1973 act were:

> If a defendant charged with a crime is acquitted by reason of mental disease or defect excluding responsibility, and it is found that he is not a substantial danger to himself or other persons, and not in need of control by the court or other persons or institutions, the court shall direct his release. If it is found that the defendant is a substantial danger to himself or others and in need of control by the court or other persons or institutions, the court may order his hospitalization or may order alternative treatment . . .

Laws of 1973, 1st Ex. Sess., ch. 117, § 11, p. 801. The 1973 act clearly manifested the Legislature's concern that hospitalization be available for those defendants acquitted on insanity grounds who posed a substantial danger to people (themselves or others) and were in need of control by the courts or other institutions.

In 1974, the Legislature enacted RCW 10.77.040 and RCW 10.77.110 in substantially their current form. Reference to the defendant's dangerousness to himself was deleted in the jury interrogatories, Laws of 1974, 1st Ex. Sess., ch. 198, § 4, p. 786, and in the sentencing alterna-

tives, Laws of 1974, 1st Ex. Sess., ch. 198, § 10, p. 792. Language pertaining to a defendant's likelihood of committing felonies was added to the Senate Bill in the House. House Journal, 43d Legislature (1974), at 4238, 4240, 4244–45. Thus, the jury was now directed to consider separate questions of whether the defendant was "a substantial danger to other persons unless kept under further control . . ." and whether the defendant "present[s] a substantial likelihood of committing felonious acts jeopardizing public safety or security unless kept under further control . . ." Laws of 1974, 1st Ex. Sess., ch. 198, § 4, p. 786, 787. The sentencing provisions as passed also required consideration of the defendant's likelihood of committing felonies in addition to his dangerousness to others;

> If a defendant is acquitted by reason of insanity, and it is found that he is not a substantial danger to other persons, or does not present a substantial likelihood of committing felonious acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions, the court shall direct his final discharge. If it is found that the defendant is a substantial danger to *other persons, or does not present a substantial likelihood of committing felonious acts jeopardizing public safety or security, unless kept under further* control by the court or other persons or institutions, the court shall order his hospitalization, or any appropriate alternative treatment less restrictive than detention in a state mental hospital, pursuant to the terms of this chapter. If it is found that the defendant is not a substantial danger to other persons, or does not present a substantial likelihood of committing felonious acts jeopardizing public safety or security, but that he is in need of control by the court or other persons or institutions, the court shall direct his conditional release.

(Italics ours, indicating language vetoed by the Governor.) Laws of 1974, 1st Ex. Sess., ch. 198, § 10, p. 792. *See State v. Brasel*, 28 Wn. App. 303, 308, 623 P.2d 696 (1981).

By retaining the Senate provisions for sentencing of defendants dangerous to others and accepting the additional House provisions for sentencing of defendants likely

to commit felonies, the Legislature plainly sought to extend the statutory scheme to a class of persons more broad than those dangerous to others. Certainly, the Legislature in 1974 was no less concerned with the sentencing of defendants dangerous to others than was the Legislature in 1973. Jones' interpretation of RCW 10.77.110 is inconsistent with this history, because it allows a defendant found dangerous to others (the Legislature's original concern) to avoid sentencing appropriate for such defendants if that defendant is also found not likely to commit felonies.

We further observe that the Legislature employed the word "shall" with respect to the trial judge's sentencing responsibilities in each sentence of RCW 10.77.110. As a general rule, "shall" possesses a mandatory or imperative meaning. *Ballasiotes v. Gardner,* 97 Wn.2d 191, 642 P.2d 397 (1982); *State v. Huntzinger,* 92 Wn.2d 128, 594 P.2d 917 (1979). In order to carry out the Legislature's purpose of directing sentences which can be imposed if particular facts are found to exist, the statute must be construed so that particular facts trigger a particular sentencing alternative and not all three sentencing alternatives.

We are persuaded that the Legislature clearly intended the provisions of RCW 10.77, including RCW 10.77.110, to apply to a criminally insane defendant whose dangerousness extends either to others or to a more generalized likelihood of committing felonious acts jeopardizing the public health and safety. Accordingly, we construe the statute as urged by the State in order to fulfill the clearly expressed legislative purpose and to avoid absurd results, thereby reading RCW 10.77.110 as if the pertinent clauses of sentences 1 and 3 were conjoined by "and" rather than "or." Because Jones was found to be a substantial danger to others, neither final discharge pursuant to sentence 1 nor conditional release pursuant to sentence 3 is authorized by RCW 10.77.110. Sentence 2 applies, and the sentencing options before the trial judge were hospitalization or a less restrictive program of treatment.

Following Jones' acquittal, he was sent to Western State

in order that a treatment program, consistent with the jury's answers to the interrogatories, could be devised. The evaluation report prepared by three Western State doctors advised the trial judge that Jones was hostile, refused to accept either inpatient or outpatient treatment because he did not believe he had a mental problem, indicated he would not abide by the terms of a conditional release, and would immediately leave for Canada if placed on conditional release. Under these facts, we find no error in Jones' commitment to Western State.

The judgment and sentence are affirmed.

ANDERSEN, C.J., and SWANSON, J., concur.

Reconsideration denied July 27, 1982.

Review granted by Supreme Court November 22, 1982.