[No. 48872-0.   En Banc.   February 10, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. LORENE ALICE KELLER, *Appellant.*

*Michael Mirra* of *Evergreen Legal Services,* for appellant.

*Don Herron, Prosecuting Attorney,* and *Michael R. Johnson, Deputy,* for respondent.

CUNNINGHAM, J.*—This case comes before us on certification from Division Two of the Court of Appeals. Appellant, Lorene Alice Keller, seeks review of a trial court order revoking her conditional release from Western State Hospital. We affirm.

The facts leading to this dispute are as follows: On July 20, 1975, appellant shot and killed her father, Floyd Marvin Woods. This act was apparently prompted by appellant's beliefs that her father had poisoned her mother and was poisoning her. Appellant also imagined that her father was transmitting messages to her through electronic devices implanted in her body. At her trial for first degree murder, the trial judge found that appellant suffered from chronic paranoid schizophrenia and acquitted her by reason of insanity. Appellant was then committed to Western State Hospital (WSH) where her mental condition was treated.

In 1977, appellant applied for and received conditional release status under the terms of RCW 10.77.150. That section provides for conditional release after a hearing in which it is determined that the individual may be released "without substantial danger to other persons, or substantial likelihood of committing felonious acts jeopardizing public safety or security." RCW 10.77.150(2). Acting under the authority of RCW 10.77.190(3), the trial court revoked this order of conditional release in May of 1979. At that time the court found that the appellant was again experiencing

---

*Judge D. J. Cunningham is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amend. 38).

transmissions and that the transmissions "adversely affected her ability to perform everyday tasks." Clerk's Papers, at 19. In May of 1980, appellant reapplied for release from WSH. The trial court approved her petition setting out *inter alia* the following conditions:

(3) That her (Ms. Keller's) progress will be monitored and recorded monthly by Community Program staff and a report submitted to the Court every three months, or if there is a substantial change in the treatment plan or Ms. Keller's condition.

(4) That Ms. Keller will be returned to Western State Hospital, either voluntarily or involuntarily, pursuant to RCW 10.77.190, in the event of any behavior indicating dangerousness to herself or others, and the Court shall be immediately notified of her return.

Clerk's Papers, at 8.

During the summer following her release, appellant "appeared to be under increasing stress from delusional 'transmissions'". Finding of fact 5. Also, she believed members of the hospital staff (where she resided as an outpatient) were trying to poison her. Her mental condition continued to deteriorate and on August 19, 1980, she was returned to WSH's locked ward.

At the revocation hearing, appellant argued that she had not violated any express condition of her release; therefore, revocation was improper. The trial judge revoked her release, however, after finding that implicit in her release order was the understanding that her mental disease was in a significant state of remission and "that if, for whatever reason, her mental illness re–asserted itself to the degree that she became a danger to herself and to others, she would assuredly be re–confined". Clerk's Papers, at 2. Appellant brings this appeal to challenge the court's use of an "implicit", rather than "express" condition as the basis of revocation of her conditional release. We hold that revocation was proper, because the statute contemplates revocation whenever a releasee is dangerous. Our disposition makes it unnecessary to reach the issue of whether the trial judge's reliance on implicit conditions was proper.

Appellant's release was revoked pursuant to former RCW 10.77.190(3). That section provided:

(3) The court, upon receiving notification of the apprehension, shall promptly schedule a hearing. The issue to be determined is whether the conditionally released person did or did not adhere to the terms and conditions of his release, and is a substantial danger to other persons, or presents a substantial likelihood of committing felonious acts jeopardizing public safety or security. Pursuant to the determination of the court upon such hearing, the conditionally released person shall either continue to be conditionally released on the same or modified conditions or his conditional release shall be revoked and he shall be committed subject to release only in accordance with provisions of this chapter.

Appellant argues that this section requires that the court find that an individual has *both* violated an express term of the conditional release *and* that he or she presents a substantial danger to others. Appellant's argument presents an issue of first impression for this court involving questions of statutory interpretation. For the reasons set out below, we hold that a trial judge may revoke conditional release if the individual either violates a condition of release *or* presents a substantial danger to other persons.

■ This court's primary objective in interpreting a statute is to ascertain and give effect to the intent of the Legislature. *Janovich v. Herron,* 91 Wn.2d 767, 771, 592 P.2d 1096 (1979). Although courts may not read into a statute that which the Legislature has omitted, we may construe a statute so as to avoid strained or absurd consequences which could result from a literal reading. *See State v. Martin,* 94 Wn.2d 1, 614 P.2d 164 (1980); *State v. (1972) Dan J. Evans Campaign Comm.,* 86 Wn.2d 503, 508, 546 P.2d 75 (1976).

In the case before us, appellant argues that the word "and" is unambiguous. Consequently, under established principles of statutory construction, this court may not interpret this statute. She argues further that the two clauses in this sentence must be read in the conjunctive.

Under appellant's interpretation of the statute, a trial judge may not revoke an individual's conditional release, no matter how dangerous that individual is, unless a condition of release was violated. We disagree.

■ To begin with, the principles governing statutory interpretation are not as clear as those proposed by appellant. In fact, the very word at issue here, "and", has been frequently interpreted by courts to mean "or". As noted by one leading commentator,

> [t]here has been, however, so great laxity in the use of these ["and" and "or"] terms that courts have generally said that the words are interchangeable and that one may be substituted for the other, if to do so is consistent with the legislative intent.

(Footnote omitted.) 1A C. Sands, *Statutory Construction* § 21.14, at 91 (4th ed. 1972). *See also State v. Tiffany,* 44 Wash. 602, 604, 87 P. 932 (1906). More recently, Division One of the Court of Appeals substituted the term "and" for "or" in interpreting section .110 of RCW 10.77. *See State v. Jones,* 32 Wn. App. 359, 647 P.2d 1039 (1982). *Jones* involved the sentencing alternatives created by RCW 10.77.110. In *Jones,* the jury found that the defendant did not present a substantial danger of committing felonious acts, but did present a substantial danger to other persons. The court read the word "or" in sentences 1 and 3 of RCW 10.77.110 to mean "and", thus rejecting appellant's argument that the lack of a conjunctive word in that position required his conditional release. By so interpreting this statute, the court noted that this construction was necessary to avoid the absurd results.

■ For reasons similar to those expressed in *Jones,* we find that RCW 10.77.190(3) requires that we interpret this section to effectuate the legislative intent. First, the State has a legitimate interest in ensuring the safety and security of its citizens by the commitment of individuals who are dangerous. *See Alter v. Morris,* 85 Wn.2d 414, 536 P.2d 630 (1975); In re Harris, 98 Wn.2d 276, 654 P.2d 109 (1982). In *Harris,* this court noted the difficulties associated with pre-

dictions of whether an individual will become dangerous. *Harris*, at 281. Nonetheless, the court held that those difficulties did not prohibit civil commitment when there exists a substantial risk that the individuals will be dangerous to themselves or society. In criminal insanity cases, the risk of danger is even more apparent and the judge's need to act to protect the public more urgent. In the case here, for instance, Ms. Keller's original commitment occurred after she shot and killed her father. She took that action because she believed that her father was poisoning her. After her last conditional release, her paranoic fear reappeared, and once again she accused people of poisoning her. Given these facts, revocation was necessary. The law must be interpreted with sufficient flexibility to allow a trial judge to act to protect the public. This is the clear intent of RCW 10.77. *See generally State v. Jones, supra.*

Furthermore, the interpretation of this statute urged by appellant ignores practical difficulties trial judges may encounter in drafting conditions of release. Appellant seems to imply that the trial judge should have expressly stated that the reoccurrence of transmissions would cause revocation. This reasoning places too high a burden on the judge who drafts conditional release orders. To comply with such a mandate, the trial judge would have to review each case for symptoms that may produce violence and expressly make absence of each symptom a condition of release. This task, of identifying critical symptoms of mental illness, is beyond the expertise of most mental health personnel, let alone judges. Such a requirement would be counterproductive and contrary to the clear legislative purpose of RCW 10.77. We hold, therefore, that RCW 10.77.190 authorizes a trial judge to revoke conditional release upon a showing that the individual is dangerous.[1] Such was the case here,

---

[1] We note that RCW 10.77.190(3) was recently amended. The new statute deletes all references to the individual's dangerousness. Under this statute, presumably the judge must make lack of dangerousness an explicit condition of release. We reserve this issue, however, for a case arising under the new statute.

and revocation was therefore proper.

The trial court is affirmed.

WILLIAMS, C.J., and STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., concur.

Reconsideration denied March 30, 1983.