STATE

v.

Robert SMITH.

Nos. 84–594–M.P., 85–116–C.A.

Supreme Court of Rhode Island.

June 17, 1986.

Arlene Violet, Atty. Gen., Christopher S. Gontarz, Thomas Dickinson, Sp. Asst. Attys. Gen., for plaintiff.

Robert B. Mann, Providence, for defendant.

## OPINION

MURRAY, Justice.

This is a pretrial appeal by the state arising out of a murder case. The state is before us challenging a decision of the trial justice to grant in part a motion to suppress in favor of Robert Smith (defendant), and to refuse to determine whether the state or the defendant has the burden of proof on the issue of insanity. In conjunction with this appeal and pursuant to a writ of certiorari, the defendant has petitioned this court to review the trial justice's denial of a motion to bifurcate the trial on the issues of guilt and insanity. The contentions raised by the respective parties are predicated on the following facts.

On February 10, 1982, at approximately 11:05 p.m. the Providence police received a telephone call from a person who identified himself as Attorney Keven McKenna. According to the record, McKenna stated that

he had learned through a phone conversation with defendant's father a few minutes earlier that defendant had shot his wife in the head at 55 Eliza Street in Providence. McKenna further apprised the police that he would meet them at 55 Eliza Street and that a rescue squad should be sent to the scene. In response to this communication, the police proceeded to the aforementioned address to investigate a possible homicide.

When the police arrived at 55 Eliza Street, they were approached by McKenna, who informed them that defendant was not in the house but that he had just spoken with him by telephone. McKenna further advised the police that they would find the victim lying in the bed in the bedroom and a gun on the floor. At this juncture, McKenna showed police how to enter the house and opened the door to the entranceway for them.

Once inside the dimly lit two-room apartment, the police found the partially covered body of defendant's deceased wife on the bed in the bedroom. An autopsy report later determined the cause of death to be a single gunshot wound to her forehead. Following the discovery of the victim, the police conducted a search of the premises and seized, inter alia, the following items: (1) a Remington .22–caliber rifle, with its bolt action open, that was leaning with its butt plate down against the door jamb between the kitchen and the bedroom; (2) a spent .22–caliber long rifle shell casing located on top of the kitchen counter; (3) a plastic container holding ninety-seven rounds of .22–caliber long rifle ammunition and a "brokendown" $CO_2$ pistol stored in closed cabinets in the kitchen; and (4) a stack of photographs and defendant's expired Rhode Island operator's license, both situated in close proximity to an overturned purse on the kitchen counter.

During the search, McKenna apparently waited outside the house. After the police had secured the structure and completed their search, McKenna indicated to them that he knew defendant's whereabouts and that he intended to bring the suspect down

to the police station. After being informed that he would have to respond to the station and provide a statement, McKenna left the scene.

Meanwhile, the police through their own investigative efforts had discerned that defendant was probably at his parents' home in Cranston. When the police arrived at the home of defendant's parents shortly after midnight, McKenna and defendant were about to leave in McKenna's car for the station. A confrontation ensued between the officers and McKenna, who insisted that they not arrest defendant and that he be permitted to take defendant to the station. The police, however, arrested defendant and transported him in their cruiser to the station with McKenna following in his car.

On February 11, 1982, defendant was admitted to the Institute of Mental Health pursuant to an order of the District Court to determine his competency to stand trial. Subsequently, on April 15, 1982, a grand jury issued an indictment against defendant charging him with the murder of his wife. As a result, on May 19, 1982, defendant was arraigned in Superior Court and pleaded not guilty. Thereafter, at a preliminary hearing on December 16, 1982, defense counsel assented to a psychiatrist's finding that defendant was competent to stand trial. On January 3, 1983, defendant, in response to the competency determination, filed a notice of his intent to raise the defense of temporary insanity. In addition, defendant also moved for a bifurcated trial on the issues of guilt and insanity. Following extensive discovery and the withdrawal of McKenna as defense counsel, defendant's new attorney presented a motion to suppress, inter alia, the items seized by the police in their search of defendant's home.

At a four-day pretrial hearing commencing on October 23, 1984, the trial justice denied defendant's motion to bifurcate. In regard to the suppression motion, the trial justice posited that he would not suppress the spent shell casing, defendant's Rhode

Island operator's license, and the stack of photographs because they were all in plain view on the kitchen counter. He, however, granted the suppression of the box of shells and the CO2 pistol found by the police in the kitchen cabinets. The trial justice reasoned that because the premises had been secured prior to the discovery of the box of shells and the pistol, there existed no exigent circumstances to justify a warrantless search of the cabinets. Further, from the evidence before him, the trial justice ascertained that the search of the cabinets by the police went beyond the invitation extended to them by defendant's attorney, McKenna, and constituted a violation of defendant's expectation of privacy.

During the course of this hearing the state made an oral motion in limine to determine whether defendant or the state had the burden of proving insanity. Although the state advocated that the burden is upon the defendant on this particular issue, the trial justice refused to rule on the motion, claiming that he was not required to do so at this point in the case.

Pursuant to these rulings, the state appealed to this court, contesting both the trial justice's decision to suppress the items seized from the kitchen cabinets and his refusal to determine which party bears the burden on the insanity issue. In addition, defendant petitioned this court via a writ of certiorari to review the trial justice's denial of the motion to bifurcate the trial. We granted defendant's petition on the bifurcation question and consolidated it with the aforementioned issues raised on appeal by the state.

Whether the trial judge committed error in denying the motion for a bifurcated trial on the issues of guilt and insanity constitutes a question of first impression in this jurisdiction.[1] The thrust of defendant's argument is that his defense on the merits and his insanity defense will be prejudiced by a joint trial. In support of this contention, defendant claims that presenting both defenses to a jury will serve to undermine each defense by virtue of their apparent inconsistency. As defendant alleges in his brief, "[O]ne defense says 'I didn't do it,' and the other says, 'I did it, but please excuse my action because of my mental condition.'" *See* Shadoan, *Raising the Insanity Defense: The Practical Side*, 10 Am.Crim.L.Rev., 533, 538 (1972). The defendant further argues that he is entitled under both the United States and the Rhode Island Constitutions, and various Rhode Island statutes, to a bifurcated trial on the issues of guilt and insanity.

In examining the merits of defendant's argument, we are mindful that a bifurcated trial is neither constitutionally mandated nor statutorily authorized. *People v. Alerte*, 120 Ill.App.3d 962, 974, 76 Ill.Dec. 452, 460, 458 N.E.2d 1106, 1114 (1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 777, 83 L.Ed.2d 773 (1985). Nevertheless, defendant contends that he should be granted a bifurcated trial based on his constitutional right to due process. Various federal courts, however, have determined in ruling on this matter that due process does not require a separate trial on the question of insanity and that states are

1. A review of the record indicates that at the hearing on October 25, 1984, defendant's counsel moved that the accused be permitted to enter an additional plea of not guilty based on diminished capacity. This particular motion, however, occurred immediately after the trial judge ruled on the bifurcation question. On October 29, 1984, four days subsequent to the trial judge's ruling on the bifurcated-trial issue, defendant's counsel filed a notice of his intent to rely on the defense of diminished capacity. In his brief, defendant's counsel incorporates a discussion of the diminished-capacity defense into his analysis of the bifurcation question, including a unprecedented proposition, which was not advanced at trial, to bifurcate the trial on the issues of homicide and the mental-health defenses. In light of these novel advocations raised by defendant for the first time on appeal, we emphasize that this court will not consider new arguments or issues that were not presented to the trial court below. *State v. Long*, 488 A.2d 427, 432 (R.I.1985). We reiterate for purposes of clarification that the issue before us is whether the trial judge erred in denying the motion for a bifurcated trial on the issues of guilt and insanity.

free to determine whether the issues of guilt and insanity should be tried separately or together. *See State v. Rogers,* 17 Ohio St.3d 174, 177, 478 N.E.2d 984, 988–89, *vacated on other grounds,* —— U.S. ——, 106 S.Ct. 518, 88 L.Ed.2d 452 (1985) (citing *Vardas v. Estelle,* 715 F.2d 206, 212–13 (5th Cir.1983), *cert. denied,* 465 U.S. 1104, 104 S.Ct. 1603, 80 L.Ed.2d 133 (1984); *Murphy v. Florida,* 495 F.2d 553, 557 (5th Cir.1974), *aff'd,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975) ).

The defendant also claims that the denial of a bifurcated trial will force him into a strategic dilemma of constitutional proportions. On the one hand, defendant asserts that his privilege against self-incrimination will be violated and his defense on the merits prejudicially compromised if he is compelled to testify in support of his insanity defense. On the other hand, if defendant foregoes his opportunity to testify, fearful that any testimony he may proffer to substantiate his insanity claim will negate his defense on the merits, he is compelled to forfeit his right to present evidence on his own behalf, including his right to testify. Such a forfeiture, according to defendant, will violate his constitutional right to testify as guaranteed by the Sixth Amendment to the United States Constitution and article I, section 10 of the Rhode Island Constitution. In addressing this strategic problem, we hasten to point out that defendant on his own initiative has chosen to raise the defense of temporary insanity. Neither the trial judge nor the state has compelled defendant to raise this particular defense. *See State v. Kahn,* 175 N.J.Super. 72, 83–84, 417 A.2d 585, 592 (1980). Here, the hard choice in deciding to raise the insanity defense is of defendant's own making. Granted, that choice may be a difficult one as far as trial strategy is concerned, but " '[t]he criminal process, like the rest of the legal system, is replete with situations requiring "the making of difficult judgments" as to which course to

follow.' " *State v. Haseen,* 191 N.J.Super. 564, 566, 468 A.2d 448, 449 (1983). The overwhelming majority of jurisdictions that have ruled on the subject have determined that bifurcated trials are not required in situations where a defendant creates the hard choice. *Id.* at 567, 468 A.2d at 449.

■ Focusing upon defendant's contentions regarding the prejudicial effects of a joint trial, we acknowledge that the primary purpose of a bifurcated trial is to effectively eliminate any prejudice that may result from the simultaneous presentation of inconsistent defenses. Jurisdictions that permit bifurcation normally do so "whenever a defendant shows that he has a substantial insanity defense and a substantial defense on the merits, either of which would be prejudiced by simultaneous presentation." *State v. Boyd,* 280 S.E.2d 669, 675 (W.Va.1981) and *State v. Ward,* 301 N.C. 469, 474, 272 S.E.2d 84, 87–88 (1980). In these same jurisdictions, there is a uniform denial of bifurcation where the defense on the merits consists of a bare denial of the commission of the crime, or is confined to putting the government to its proof. *State v. Boyd,* 280 S.E.2d at 676. Although we do not adopt the aforementioned "substantiality" test as outlined in *Boyd* and *Ward,* we note for purposes of addressing defendant's prejudice claims that he has merely asserted a plea of not guilty to the murder charge.[2] Hence, because of defendant's failure to point out any unusual or exceptional aspect of his defense on the merits, no prejudice will result from a joint trial where his defenses are simultaneously presented.

■ In his brief, defendant advocates that the inherent powers of the trial court and the Rules of Criminal Procedure afford him a procedural basis for securing a bifurcated trial. Responding to this contention, we cite Rule 31(e) of the Superior Court Rules of Criminal Procedure, which unequivocally states that "[i]f a defendant raises the defense of insanity and evidence

---

2. The record discloses that in responding to the state's request for discovery, defendant stated

that he does not intend to rely on a defense of alibi.

thereof is presented *at the trial*, the jury, if it finds him not guilty on that ground, shall declare that fact in its verdict." (Emphasis added.) Clearly, the language of Rule 31(e) contemplates a single trial when the insanity defense is asserted by a defendant. In our considered judgment a single trial on the issues of guilt and insanity is preferable because it conserves judicial resources and avoids the inherent unfairness of giving the accused two chances at acquittal. *State v. Haseen*, 191 N.J.Super. at 567, 468 A.2d at 449. Moreover, evidence relating to insanity may not be easily separable from other evidence bearing upon a defendant's guilt. *State v. Jones*, 32 Wash.App. 359, 369, 647 P.2d 1039, 1045 (1982), *reversed on other grounds*, 99 Wash.2d 735, 664 P.2d 1216 (1983). Attempting to draw a logical and administratively feasible line between the evidence of the insanity defense and the evidence supporting the defense on the merits is, as one commentator put it, a "herculean task." *See* Louisell & Hazard, *Insanity as a Defense: The Bifurcated Trial*, 49 U.Cal.L.Rev. 805, 820 (1961). In any event, even if the evidentiary support for each defense could be separated, limiting the introduction of evidence bearing upon the accused's state of mind on the issue of guilt to such evidence that does not lend support to the insanity defense may deny to the jury evidence necessary to determine if the defendant committed the crime charged. *State v. Jones*, 32 Wash. App. at 369, 647 P.2d at 1045. Taking into account these inherent problems with bifurcated trials and the practicality of a single proceeding where the jury is given the entire picture of the case, a joint trial on the issues of guilt and insanity is a preferable course to follow.

■ Returning to the issue concerning the propriety of the trial judge's decision to deny bifurcation, we note that other jurisdictions have held that bifurcation rests solely within the discretion of the trial judge and that the defendant must show an abuse of discretion for reversal. *State v. Rogers*, 17 Ohio St.3d at 177, 478 N.E.2d at 989. Applying this standard in connection with our above discussion of defendant's contentions pertaining to bifurcation, we find that defendant has failed to show an abuse of discretion in this case. The trial judge therefore committed no error in denying defendant's motion for a bifurcated trial.[3]

■ In regard to whether the state or defendant must carry the burden of proof on the insanity issue, the state contends that this burden rests with defendant. Our review of the record reveals that the trial judge apparently refused to rule on the motion, asserting that this court in *State v. Arpin*, 122 R.I. 643, 410 A.2d 1340 (1980), left unresolved the question of which party bears the burden on the criminal responsibility issue under the newly adopted American Law Institute (ALI) test. The trial judge posited that, under the circumstances, he would not make an advanced ruling in the abstract where there was no evidence before him that established insanity as a bonafide issue in the case. He further commented that as a trial justice he is required to instruct the jury only on those issues raised by proper evidence during the course of the trial. As a result, the state's oral motion on this matter was denied. Pursuant to this ruling and in order to remove any ambiguity surrounding this court's opinion in *Arpin*, we are compelled to clarify our position that under the new ALI standard for determining criminal responsibility, the burden is on the defendant to prove the lack of such responsibility by a fair preponderance of the evidence.

This court in *State v. Johnson*, 121 R.I. 254, 399 A.2d 469 (1979), abrogated the previously adhered to *M'Naghten* rule in

---

**3.** Referring to our discussion in note 1, *supra*, even if the trial judge had considered and thereafter denied defendant's novel request for a bifurcated trial on the issues of homicide and the mental health defenses, we would affirm that denial for the same reasons as stated in the text above.

favor of the more scientifically progressive ALI Model Penal Code test for legal insanity. Thereafter, in *State v. Arpin*, we addressed a defendant's constitutional due-process challenge to the placement of the burden of persuasion for insanity under *M'Naghten* on the accused in a murder trial. Because we declined to apply the new ALI test retroactively, the following unambiguous and qualitative language was included in *Arpin* pertaining to constitutional problems that may arise under the ALI test:

"We do not address today the question of whether the extrinsic facts necessary to establish the *mens rea* of premeditation and the facts necessary to prove legal insanity under our new ALI test are so interrelated, or overlap so substantially, as to present constitutional problems. Our decision today does not preclude future consideration of constitutional problems that may inhere in the Rhode Island rule that requires a criminal defendant, by a fair preponderance of the evidence, to establish legal insanity as defined by the new test." *Arpin*, 122 R.I. at 664–65, 410 A.2d at 1351–52.

From a review of this pertinent portion of our *Arpin* opinion, it is patently clear that although we left the door open to future consideration of constitutional difficulties that may arise under the ALI test, the burden of proving the lack of criminal responsibility, as defined by the new standard, remained on the defendant. Relying on the above analysis, therefore, we find that the trial justice erred in denying the state's request to rule on this particular subject.

■ Referring to the constitutional claim raised in conjunction with this issue, defendant asserts that placing the burden of proving insanity on him violates his right to due process under the United States and Rhode Island Constitutions. Although this argument was not advanced at the hearing, we note without digressing to any great length that in *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the United States Supreme Court reaffirmed its holding in *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), that the shifting of the burden to a defendant to prove insanity is not violative of the provisions of the United States Constitution. *State v. Capalbo*, 433 A.2d 242, 245 n. 7 (R.I.1981). We therefore hold that requiring defendant to bear the burden of proving the lack of criminal responsibility under our new ALI test is constitutionally proper.

Another contention raised by the state is that the trial judge erred in suppressing the items that were seized by police from the closed kitchen cabinets in defendant's home. In its brief, the state attempts to support this allegation of error by advocating that the search was constitutionally permissible because the police officers reasonably believed in good faith that McKenna had the apparent authority to consent, on behalf of defendant, to a general search of the premises. *See People v. Adams*, 53 N.Y.2d 1, 422 N.E.2d 537, 439 N.Y.S.2d 877, *cert. denied*, 454 U.S. 854, 102 S.Ct. 301, 70 L.Ed.2d 148 (1981). Notwithstanding the potential application of this emerging third-party consent doctrine, a reading of the transcript reveals that this theory was not presented at the pretrial hearing by the state. More importantly, the record below indicates that the state explicitly eschewed reliance on a consent theory with respect to the suppression motion:

"MR. DeSISTO: I will move on the second argument then. That argument deals with the Defendant's standing to contest the search in the first place. The State's argument is that his attorney, Mr. Keven McKenna, waived consent— not consent but waived his expectation of privacy in that small two-room house when he opened the doors to the officers and invited them in. I am not saying he consented—

"THE COURT: Waived the—

"MR. DeSISTO: Expectation to privacy. I can't expound on that other—

"THE COURT: I am satisfied he didn't waive it to that extent."

As a result of the state's failure to set forth at the hearing this particular third-party consent doctrine, we are precluded from considering it for the first time on appeal. *State v. Long,* 488 A.2d 427, 432 (R.I.1985).[4] It is a well-established principle in this jurisdiction that this court will consider only those matters that have been properly raised before the court below. *Id.* Moreover, since the state has not asserted any other grounds on appeal to justify either the search or its allegation that the trial judge committed error in suppressing the items seized, we are compelled to find that the trial judge did not err in granting the suppression of the $CO_2$ pistol and the ammunition situated in the kitchen cabinets.

Premised on the above reasoning and authorities, the decision of the trial judge to deny the defendant's request for a bifurcated trial is affirmed. Accordingly, the defendant's writ heretofore issued is hereby quashed. The trial judge's decision to suppress is also affirmed, and the state's appeal is denied. Lastly, the trial judge's refusal to rule on the insanity/burden of proof issue is reversed. The state's appeal is affirmed, and the papers are remanded to the Superior Court for further proceedings.

---

4. *See* J. Weisberger, *Rhode Island Appellate Practice,* § 16.5 at 86 (1985):

"Issues That May be Addressed on Appeal.— The Supreme Court of Rhode Island has been steadfast in its adherence to the general proposition that no issues may be raised on appeal unless such issues were presented to the trial court in such a posture as to alert the trial justice to the question being raised. * * * This rule is enforced in criminal cases as well. *See, e.g., State v. Tarvis,* 465 A.2d 164 (R.I. 1983); *State v. Watkins,* 448 A.2d 1260 (R.I. 1982); *State v. Colazzo,* 446 A.2d 1006 (R.I. 1982); *State v. Fogarty,* 433 A.2d 972 (R.I. 1981); *State v. Pope,* 414 A.2d 781 (R.I.1980); *State v. Giordano,* 413 A.2d 93 (R.I.1980)."