177 P.3d 675 (2008)
In the Matter of the PERSONAL RESTRAINT OF Amel W. DALLUGE, Petitioner.
No. 79841-9.
Supreme Court of Washington, En Banc.
Argued October 18, 2007.
Decided January 17, 2008.
David L. Donnan, Gregory Charles Link, Washington Appellate Project, Seattle, WA, for Petitioner.
Donna H. Mullen, John Joseph Samson, Attorney at Law, Attorney General Ofc., Olympia, WA, for Respondent.
CHAMBERS, J.
¶ 1 Criminal sentences often include a period of community custody. By design, the whole "period" of community custody must be served in the community. With an exception that is not relevant to us today, any time an offender spends in jail does not count toward serving a community custody sentence. In the language of the statute, the "period" is "tolled." RCW 9.94A.625(3).
¶ 2 Amel Dalluge was serving a year of community custody when he was arrested and taken to jail where there was an altercation. The Department of Corrections found this altercation violated the terms of Dalluge's community custody and, after a hearing, *676 sanctioned him. Dalluge argues that, since his "period" of community custody was tolled at the time of the altercation, the department's power to discipline him must also have been tolled. We disagree and hold that the department had the statutory power to sanction Dalluge for his jailhouse misconduct.

FACTS
¶ 3 Dalluge is no stranger to this court. See, e.g., In re Pers. Restraint of Dalluge, 152 Wash.2d 772, 100 P.3d 279 (2004). We recently considered whether he was properly declined from juvenile court into adult court on two rape charges. Id. at 776, 100 P.3d 279. Not long after our opinion was published, Dalluge was released from prison to community custody. Community custody has not gone smoothly for him. In 2005, Dalluge was taken to the Grant County jail where, it appears, he threatened officers with pieces of a broken telephone. Based on what happened that day, Dalluge was convicted on assault, malicious mischief, and weapons charges.
¶ 4 Not satisfied with the criminal convictions for Dalluge's jailhouse misconduct, the department also sought to discipline him for violating the "obey all laws" condition of his community custody. The hearing officer, Kimberly Allen, found Dalluge "guilty" of two counts of violating the conditions of community custody (malicious mischief and assault on a law enforcement officer) and sanctioned him with 60 days' total confinement, beginning February 28, 2006. See RCW 9.94A.737(1) (authorizing the department to confine offenders who violate custody terms). The department asserts (without contradiction from Dalluge) that he served those 60 days concurrently with time he spent in pretrial confinement on other charges.
¶ 5 After an unsuccessful internal appeal, Dalluge filed this personal restraint petition claiming that the department singled him out in violation of his equal protection rights, that the notice of violation did not specify what policy he was alleged to have violated, and that the department lacked the power to discipline him for misconduct committed while he was in jail. Chief Judge Sweeney dismissed his petition, noting:
tolling is an administrative procedure which prevents the offender from getting credit against community custody at the same time he is being held on a separate offense. Mr. Dalluge cites no authority for the proposition that tolling means the offender is not subject to the conditions of community custody. And, such an argument would lead to the absurd result that an offender who was subject to a no-contact order as a condition of his community custody, could contact his victims while he was in jail.
Order Dismissing Pers. Restraint Pet. (Feb. 21, 2007). We granted review.

ANALYSIS
¶ 6 Personal restraint petitions are not a substitute for direct review. Petitioners challenging a court judgment and sentence must do more than show legal error; they must either show constitutional error that caused actual and substantial prejudice or nonconstitutional error that inherently caused a complete miscarriage of justice. In re Pers. Restraint of Lord, 152 Wash.2d 182, 188, 94 P.3d 952 (2004) (citing In re Pers. Restraint of Cook, 114 Wash.2d 802, 812, 792 P.2d 506 (1990)). But when, as here, direct review is not available, we apply a more lenient standard. Dalluge can prevail if he can show he is under "unlawful" (as meant by RAP 16.4(c)) "restraint" (as meant in RAP 16.4(b)). In re Pers. Restraint of Isadore, 151 Wash.2d 294, 299, 88 P.3d 390 (2004) (citing In re Pers. Restraint of Garcia, 106 Wash.App. 625, 628, 24 P.3d 1091, 33 P.3d 750 (2001)). Petitioners are restrained if, among other things, they are confined or are "under some other disability resulting from a judgment or sentence in a criminal case." RAP 16.4(b); see also In re Pers. Restraint of Cashaw, 123 Wash.2d 138, 149, 866 P.2d 8 (1994).
¶ 7 We granted review primarily to decide whether the department's power to enforce the conditions of community custody is suspended while the offender is confined. This is a question of statutory interpretation. Our review is de novo and our goal is to *677 determine the intent of the legislature. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002).
¶ 8 Community custody "means that portion of an offender's sentence . . . served in the community subject to controls placed on the offender's movement and activities by the department." RCW 9.94A.030(5) (emphasis added).[1] A "period of community custody . . . shall be tolled during any period of time the offender is in confinement for any reason." RCW 9.94A.625(3). Dalluge contends that since the "period" was tolled while he was in jail, the department's power to enforce custody conditions must be tolled as well. The department disagrees.
¶ 9 While the plain language of RCW 9.94A.030(5) and RCW 9.94A.625(3) arguably supports either party's interpretations, looking at the sentencing scheme as a whole, we agree with the department. Cf. Campbell & Gwinn, LLC, 146 Wash.2d at 11, 43 P.3d 4 (court may consider related statutes when divining the plain meaning of the statute). The legislature has explicitly and broadly given the department the power and responsibility to supervise offenders while on various types of community custody. RCW 9.94A.720. The Sentencing Reform Act of 1981, chapter 9.94A RCW, says nothing about the department's power and responsibility being tolled while offenders are confined and instead uses sweeping language. E.g., RCW 9.94A.720(1)(a) ("all offenders sentenced to terms involving . . . community custody shall be under the supervision of the department and shall follow explicitly the instructions and, conditions of the department." (emphasis added) ). It would be peculiar, to say the least, if an offender could evade the requirements of section .720(1)(a) by committing an offense that results in confinement. It also seems very unlikely to us that the legislature intended that community custody conditions, such as no contact orders, would be suspended while an offender is in jail. Cf. United States v. Camarata, 828 F.2d 974, 981 (3d Cir.1987) (parole could be revoked before it began based on offender violation of laws); see also State v. Keller, 98 Wash.2d 725, 728, 657 P.2d 1384 (1983) (court will not read statutes, in an absurd or strained way).
¶ 10 The department's reading is consistent with the legislature's uncodified statement of purpose:
The legislature intends that all terms and conditions of an offender's supervision in the community, including the length of supervision and payment of legal financial obligations, not be curtailed by an offender's absence from supervision for any reason including confinement in any correctional institution.

Laws of 2000, ch. 226, § 1. Based on all these statutes, we conclude that the legislature intended the department to retain supervisory power and responsibility while offenders on community supervision are confined.[2]
¶ 11 We turn briefly to the remaining issues. First, we deny the department's motion to dismiss this case as moot. Even assuming this case is moot (which, given that Dalluge will be subject to more stringent conditions in the future, is in doubt), we have the power to decide a moot case to resolve issues of "continuing and substantial public *678 interest" if guidance would be helpful to public officers and the issue is likely to recur. Sorenson v. City of Bellingham, 80 Wash.2d 547, 558, 496 P.2d 512 (1972) (citing State ex rel. Yakima Amusement Co. v. Yakima County, 192 Wash. 179, 73 P.2d 759 (1937)). We conclude that this case qualifies. E.g., Cashaw, 123 Wash.2d 138, 866 P.2d 8; In re Pers. Restraint of Myers, 105 Wash.2d 257, 261, 714 P.2d 303 (1986).
¶ 12 Finally, Dalluge alleged below that his equal protection rights were violated because the department treated him differently from other offenders and because the notice of violation did not cite a particular policy Dalluge allegedly violated. But Dalluge does not support either claim with argument or citation and appears to have abandoned them. We decline to disturb the chief judge's dismissal of these claims. State v. Johnson, 119 Wash.2d 167, 171, 829 P.2d 1082 (1992) (declining to reach an issue not well argued or cited).

CONCLUSION
¶ 13 We conclude that the department had the statutory authority to sanction Dalluge for violating the terms of community custody while he was confined. We affirm the dismissal of his personal restraint petition.
WE CONCUR: CHARLES W. JOHNSON, SUSAN OWENS, MARY E. FAIRHURST, JAMES M. JOHNSON, JJ., BOBBE J. BRIDGE, Justice Pro Tem.
SANDERS, J. (dissenting).
¶ 14 The majority derives a legislative intent contrary to the plain text of the statute, concluding while the period of community custody tolls, the conditions of community custody remain. Majority at 677. I disagree. I would apply the statute as written, tolling both the period and the conditions of community custody.
¶ 15 Our goal in every statutory construction inquiry is to implement the legislature's intent as gleaned from the statute's plain language and ordinary meaning. See, e.g., State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003). When the legislature uses different words in the same statute, we presume the legislature intends those words to have different meanings. Koenig v. City of Des Moines, 158 Wash.2d 173, 182, 142 P.3d 162 (2006). When the legislature's intent is not apparent from the relevant statute's plain language and ordinary meaning (i.e., it is ambiguous), only then may "we attempt to give force to the intent of the Legislature, considering the act as a whole and any other materials that illuminate legislative intent." Sebastian v. Dep't of Labor & Indus., 142 Wash.2d 280, 285, 12 P.3d 594 (2000). See also Troxell v. Rainier Pub. Sch. Dist. No. 307, 154 Wash.2d 345, 361, 111 P.3d 1173 (2005) (Chambers, J., dissenting) ("If the meaning of the statute is plain on its face, then the court must give effect to that plain meaning.").
¶ 16 Here, RCW 9.94A.625 uses two different terms in subsections (3) and (4) to describe the tolling process: "period of community custody" and "terms of . . . community custody." "Period" is not defined in the statute but is defined as a "customary or ordained length of existence." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1680 (2002).[1] "Term[s]" is not defined and has two common definitions: "a limited or definite extent of time" and "propositions, limitations, or provisions stated or offered for the acceptance of another and determining . . . the nature and scope of the agreement." Id. at 2358. Since the first meaning of "terms" is synonymous with the definition of "period," the second definition under the aforementioned rule of statutory interpretation must apply since we presume different words have different meanings. Koenig, 158 Wash.2d at 182, 142 P.3d 162. The use of the plural "terms" reinforces this conclusion because if only the temporal length of community custody were at issue, the text would have used the singular "term."[2] Moreover, what else could be a period of community custody but *679 the time an offender is in the community and subject to conditions of custody?
¶ 17 Reflecting this simple wisdom, the text defines "[c]ommunity custody" as "that portion of an offender's sentence of confinement . . . served in the community subject, to controls placed on the offender's movement and activities"[3] So, when an offender is incarcerated, the "period of community custody . . . shall be tolled during any period of time the offender is in confinement for any reason,"[4] with the Department of Corrections (DOC) establishing the date for tolling the offender's "terms of . . . community custody."[5] "Toll[ed]" is not defined in the statute but its common meaning is "to stop the running of; to abate." BLACK'S LAW DICTIONARY 1525 (8th ed.2004). Thus, the "period of community custody" is the length of time an offender is in the community and subject to DOC control. When an offender is incarcerated, RCW 9.94A.625 stops the running of the time of community custody and abates DOC's control. This makes complete sense; when an offender is incarcerated in a county jail, he or she is under the control of the county jailor not DOC.[6]
¶ 18 These provisions are about as close to a model of clarity as one can expect. Plain language requires no construction to understand its meaning and we "should assume the Legislature means exactly what it says." State v. Chapman, 140 Wash.2d 436, 450, 998 P.2d 282 (2000). See also Hangartner v. City of Seattle, 151 Wash.2d 439, 453, 90 P.3d 26 (2004) ("[W]e will not look past the clear language of th[e] statute."). Yet the majority looks past the statute's clear language and resorts to extrinsic evidence to fabricate an intent contrary to the one clearly expressed by the text.[7] "[W]here the meaning of the language used is plain, and the language is in itself susceptible of a rational construction, the meaning of the statute must be found from the language of the act itself." In re Estate of Sherwood, 122 Wash. 648, 655-56, 211 P. 734 (1922).
¶ 19 Notwithstanding the above, the majority's departure from the literal wording of the statute to fabricate its contrary intent is unsupported by the extrinsic evidence it uses.
¶ 20 The majority points to RCW 9.94A.720(1)(a) and an "uncodified statement of purpose" as evincing the legislature's intent to allow conditions of community custody to continue during the tolling period. Majority at 5-6. RCW 9.94A.720(1)(a) states, "all offenders sentenced to terms involving . . . community custody shall be under the supervision of [DOC]." But reading further in RCW 9.94A.720(1)(d) reveals DOC's supervisory power is limited to only "prior to or during an offender's community custody term."` Nothing there suggests the conditions of community custody continue during the tolling period of an offender's community custody term.
¶ 21 Moreover, RCW 9.94A.700(4) provides, "the terms of any community placement . . . shall include the following conditions," naming five terms of any community custody. How can a statute name terms (RCW 9.94A.700(4)) and require DOC to set the date for tolling those terms (RCW 9.94A.625(4)) but not intend those terms to toll? Only the tone deaf would find harmony in the majority's construction of this statute. See City of Seattle v. Fontanilla, 128 Wash.2d 492, 498, 909 P.2d 1294 (1996) (statutory provisions should be harmonized with related provisions).
*680 ¶ 22 According to the majority, an uncodified statement of purpose provides the answer.
"The legislature intends that all terms and conditions of an offender's supervision in the community, including the length of supervision and payment of legal financial obligations, not be curtailed by an offender's absence from supervision for any reason including confinement in any correctional institution."
Majority at 677 (emphasis omitted) (quoting Laws of 2000, ch. 226, § 1). Assuming this statement of purpose is relevant to our inquiry,[8] it does not support a legislative intent that incarceration increases the offender's period of community custody, which is the result of the majority's interpretation.
¶ 23 Permitting the conditions of community custody to continue during the tolling period subjects the offender to a longer term of custody, a result our case law warns against: "[a]s long as the confinement and the community placement do not exceed the statutory maximum sentence, there is no error." In re Pers. Restraint of Caudle, 71 Wash.App. 679, 680, 863 P.2d 570 (1993).
¶ 24 Ultimately, the majority believes an offender could evade his conditions of community placement by becoming incarcerated, a result the legislature could not have intended. Besides the ridiculous notion of an offender incarcerating himself to be free to violate a condition of community custody, we do not have the power to rewrite a statute "even if the legislature intended something else but failed to express it adequately.'" Hangartner, 151 Wash.2d at 452-53, 90 P.3d 26 (quoting State v. Chester, 133 Wash.2d 15, 21, 940 P.2d 1374 (1997)). The best judge of the statute's intent is the words of the statute itself rather than our intuition of what the statute intended to do. If the statute's plain language does not convey the correct intent, then the legislature can amend the statute, something it does every year. See majority at 677 n. 1.
¶ 25 Here, Amel Dalluge was under community custody when he was incarcerated in Grant County on unrelated charges. The plain language of RCW 9.94A.625 tolls the period and the terms of community custody during incarceration. Because the majority ignores this plain language, permitting DOC to find Dalluge violated his terms of community custody while incarcerated,
¶ 26 I dissent.
WE CONCUR: GERRY L. ALEXANDER, C.J., and BARBARA A. MADSEN, J.
NOTES
[1] RCW 9.94A.030 is the definition section of Washington's Sentencing Reform Act of 1981(SRA), chapter 9.94A RCW. The SRA is traditionally amended several times annually. See In re Pers. Restraint of LaChapelle, 153 Wash.2d 1, 7, 100 P.3d 805 (2004) (noting that the SRA had been amended 181 times between 1981 and 2004). The definition section .030 has itself been amended nearly every year. E.g., LAWS of 2006, ch. 139, § 5; LAWS of 2006, ch. 124, § 1; LAWS of 2005, ch. 436, § 1; LAWS of 2003, ch. 53, § 55. None of the amendments appear relevant to our analysis.
[2] Dalluge contends that it is impossible to perform many conditions of community custody while confined, such as participating in drug and alcohol treatment programs and reporting to corrections officers. He suggests that this is evidence that the legislature intended to suspend community custody conditions while an offender is confined. We find it unlikely that the legislature intended to suspend the offender's obligation to obey custody conditions, especially given that no contact orders are frequently included. We also note that Dalluge does not argue that it was impossible for him to comply with the specific "obey all laws" condition of custody at issue today or to refrain from committing assault and malicious mischief.
[1] We use "dictionaries to ascertain the common meaning of statutory language." John H. Sellen Constr. Co. v. Dep't of Revenue, 87 Wash.2d 878, 883, 558 P.2d 1342 (1976).
[2] That is, of course, unless the offender is subject to community custody in multiple temporal dimensions. See Star Trek: Mirror Mirror (NBC television broadcast Oct. 6, 1967).
[3] RCW 9.94A.030(5).
[4] RCW 9.94A.625(3).
[5] RCW 9.94A.625(4).
[6] "Approximately 70 percent of convicted felons are confined in county jails rather than prisons before serving a period under DOC supervision in the community." Washington State Department of Corrections, The Criminal Justice Process, http://www.doc.wa.gov/aboutdoc/criminal justice.asp (last visited Jan. 10, 2008).
[7] To reiterate, no extrinsic evidence is necessary to construe the statute because it is unambiguous; however, if any ambiguity did exist, the rule of lenity requires the ambiguity to be resolved in a defendant's favor. See State v. Hornaday, 105 Wash.2d 120, 127, 713 P.2d 71 (1986) ("[F]undamental fairness requires that a penal statute be literally and strictly construed in favor of the accused although a possible but strained interpretation in favor of the State might be found.").
[8] A proposition I doubt because "[s]tatutory language must be given its usual and ordinary mewling, regardless of the policy behind the enactment." City of Spokane v. Taxpayers of Spokane, 111 Wash.2d 91, 97, 758 P.2d 480 (1988). "`We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: the judicial inquiry is complete.'" Zedner v. United States, 547 U.S. 489, 510, 126 S.Ct. 1976, 1991, 164 L.Ed.2d 749 (2006) (Scalia, J., concurring) (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)).