[No. 61883-1-I.   Division One.   July 13, 2009.]

*In the Matter of the Personal Restraint of* STANFORD MORGAN SPIRES, *Petitioner.*

238

*Lila J. Silverstein* (of *Washington Appellate Project*), for petitioner.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Ann M. Summers, Deputy*, for respondent.

¶1 Cox, J. — At issue in this personal restraint petition of Stanford Spires is whether the legal financial obligations (LFOs) that the trial court imposed against him in June 1992 are still enforceable. Because the 10-year limitations period expired in December 2002, we hold that the LFOs are no longer enforceable. Accordingly, we grant the petition.

¶2 The relevant facts are undisputed. On June 26, 1992, the trial court sentenced Stanford Spires to three concurrent exceptional sentences of 13 months each for three counts of unlawful issuance of bank checks.[1] According to the judgment and sentence, the crimes were all committed in February 1992.[2] The trial court also ordered Spires to pay to a bank and a car dealer a total of $8,975.53 in restitution.[3] He served his term of confinement and was released from the Washington State Penitentiary on December 13, 1992.[4]

¶3 In 1995, the superior court ordered Spires to serve 20 days in jail for failing to pay the LFOs and changing his address without notice to the Department of Corrections.[5] On August 31, 1998, the clerk of the superior court issued a bench warrant for Spires for "probation violation."[6] The State asserts and Spires agrees that this bench warrant remains outstanding.[7]

¶4 In December 2007, the trial court denied Spires' motion to terminate the LFOs for the 1992 convictions.[8] In June 2008, Spires filed this personal restraint petition. Thereafter, the acting chief judge of this court determined that the petition was not frivolous, appointed counsel, and referred this matter to the undersigned panel of judges.

---

[1] State's Response to Personal Restraint Petition, Appendix A at 2-3.

[2] *Id.* at 1.

[3] State's Response to Personal Restraint Petition, Appendix B at 1.

[4] Petitioner's Supplemental Brief, Appendix B at 1.

[5] State's Response to Personal Restraint Petition, Appendix C at 1.

[6] Personal Restraint Petition, attachment.

[7] State's Response to Personal Restraint Petition at 3; Petitioner's Supplemental Brief at 2.

[8] Petitioner's Supplemental Brief, Appendix F at 1.

## TERM OF CONFINEMENT

¶5 Spires argues that the trial court no longer has jurisdiction to enforce his LFOs. We agree.

¶6 Personal restraint petitions are not a substitute for direct review.[9] Where the petitioner has not had a prior opportunity for judicial review, the petitioner need only show that he is restrained under RAP 16.4(b) and that the restraint is unlawful under RAP 16.4(c).[10] Petitioners are restrained if, among other things, they are confined or are "under some other disability resulting from a judgment or sentence in a criminal case."[11] The restraint is unlawful if, among other things, "[t]he conviction was obtained or the sentence or other order entered in a criminal proceeding . . . instituted by the state or local government was imposed or entered in violation of the . . . laws of the State of Washington."[12] We review de novo questions of statutory interpretation.[13] When the statute's meaning is plain, we give effect to that plain meaning as an expression of legislative intent.[14] In giving effect to the plain meaning of the legislature's words, we do not question the wisdom or the public policy behind the statute.[15]

¶7 RCW 9.94A.753(4) governs certain restitution orders for offenses committed after July 1, 1985, and before July 1, 2000:

---

[9] *In re Pers. Restraint of Dalluge*, 162 Wn.2d 814, 817, 177 P.3d 675 (2008).

[10] *Id.*

[11] RAP 16.4(b); *see also In re Dalluge*, 162 Wn.2d at 817.

[12] RAP 16.4(c)(2); *see also In re Pers. Restraint of Cook*, 114 Wn.2d 802, 805, 792 P.2d 506 (1990) (relief in personal restraint petitions is not limited to constitutional errors; statutory claims are also cognizable).

[13] *State v. J.P.*, 149 Wn.2d 444, 449, 69 P.3d 318 (2003).

[14] *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

[15] *In re Pers. Restraint of Sappenfield*, 138 Wn.2d 588, 591, 980 P.2d 1271 (1999) (*Sappenfield* II).

For the purposes of this section, for an offense committed prior to July 1, 2000, the offender shall remain under the court's jurisdiction for a term of ***ten years following the offender's release from total confinement*** or ten years subsequent to the entry of the judgment and sentence, whichever period ends later. Prior to the expiration of the initial ten-year period, the superior court may extend jurisdiction under the criminal judgment an additional ten years for payment of restitution.[16]

¶8 Former RCW 9.94A.145 (1991), in effect when Spires committed his crimes in 1992, provided, "[LFOs] may be enforced at any time during the ten-year period following the offender's release from total confinement or within ten years of entry of the judgment and sentence, whichever period is longer."[17]

¶9 RCW 9.94A.760(4) (effective until August 1, 2009) is the successor statute to former RCW 9.94A.145 and provides in part:

All other legal financial obligations for an offense committed prior to July 1, 2000, may be enforced at any time during the ten-year period following the offender's ***release from total confinement*** or within ten years of entry of the judgment and sentence, whichever period ends later. Prior to the expiration of the initial ten-year period, the superior court may extend the criminal judgment an additional ten years for payment of legal financial obligations including crime victims' assessments.[18]

¶10 Spires contends that the phrase "release from total confinement" relates to the initial period of incarceration ordered in the judgment and sentence for the crime. He argues that "total confinement" does not include subsequent periods of incarceration for violations of conditions of community custody or payment of restitution related to the

---

[16] (Emphasis added.)

[17] Former RCW 9.94A.145(4) (1991), *recodified as* RCW 9.94A.760 (Laws of 2001, ch. 10, § 6).

[18] (Emphasis added.)

original crime.[19] Thus, Spires argues that the 10-year time limit began when he was released from his initial period of "total confinement" on December 13, 1992, not some later time.[20] We agree.

¶11 In *State v. Olson*,[21] Division Three of this court addressed these arguments in the context of a direct appeal. There, as here, the offender served time in jail for failing to pay the LFOs and other sentence violations after being released from the initial term of confinement ordered for the crime.[22] The offender then sought to terminate the LFOs because it had been more than 10 years since he was released from his initial period of incarceration.[23]

¶12 First, the court in *Olson* recognized that the supreme court's consideration of the phrase "release from total confinement" in *In re Personal Restraint of Sappenfield*[24] was helpful to the analysis.[25] In *Sappenfield*, the court considered amendments to a former version of the general restitution statute.[26] It held that the 10-year restitution jurisdiction was not tolled for subsequent periods of incarceration on **unrelated** crimes.[27] The court in *Sappenfield* defined the phrase "total confinement" in a context that the *Olson* court found applicable, despite the fact that *Sappenfield* was not directly on point.[28] Specifically, the court in *Sappenfield* stated:

---

[19] Petitioner's Supplemental Brief at 7.

[20] Petitioner's Supplemental Brief, Appendix B at 1. The briefing from both parties states that Spires was released from his initial period of confinement in 1993, but the record reflects that he was released in December 1992.

[21] 148 Wn. App. 238, 198 P.3d 1061 (2009).

[22] *Id.* at 240-41.

[23] *Id.* at 241.

[24] 138 Wn.2d 588, 980 P.2d 1271 (1999) (*Sappenfield* II).

[25] *Olson*, 148 Wn. App. at 244.

[26] *Sappenfield* II, 138 Wn.2d at 592 (citing former RCW 9.94A.142 (1985), *recodified as* RCW 9.94A.753 (LAWS OF 2001, ch. 10, § 6)).

[27] *Olson*, 148 Wn. App. at 244 (citing *Sappenfield* II, 138 Wn.2d at 593).

[28] *Id.*

"The [trial] court's jurisdiction begins with the imposition of sentence. It ends either 10 years later or 10 years after the offender's release from total confinement. . . . We conclude from this that the phrase 'release from total confinement' can only mean release from confinement for the crime for which restitution was ordered."[29]

The court in *Olson* also noted that the State "failed to identify any language in the restitution statute or in case law to support its position that the 10-year time period starts over if the defendant is subsequently incarcerated for probation and restitution violations related to the original crime."[30]

¶13 The court in *Olson* next concluded that the legislature did not intend for the restitution statute, RCW 9.94A.753(4), "to restart the 10-year time period after subsequent periods of incarceration related to the original crime."[31] Unlike other provisions in the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, the restitution statute has no express language tolling the time period during subsequent periods of incarceration.[32] The court also observed that Olson's subsequent periods of incarceration were for failing to report to his probation officer and failing to pay restitution requirements, "not for the crime of unlawful imprisonment for which the restitution was originally ordered."[33] Division Three accordingly reversed the

---

[29] *Sappenfield* II, 138 Wn.2d at 593 (quoting *In re Pers. Restraint of Sappenfield*, 92 Wn. App. 729, 736, 964 P.2d 1204 (1998) (*Sappenfield* I)).

[30] *Olson*, 148 Wn. App. at 244.

[31] *Id.* at 245.

[32] *Id.* at 244-45 (Statute dealing with "wash out" periods used in offender score calculations states, " '[C]lass C prior felony convictions other than sex offenses shall not be included in the offender score *if, since the last date of release from confinement* . . . the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction.' " (alterations in original) (quoting RCW 9.94A.525(2)(c))).

[33] *Id.* at 245.

trial court's order denying Olson's motion to terminate his LFOs.[34]

¶14 Here, Spires was originally sentenced to three exceptional and concurrent terms of 13 months' total confinement, community supervision, and restitution for the three charges of unlawful issuance of bank checks or drafts to which he pleaded guilty.[35] He was released from the Washington State Penitentiary on December 13, 1992.[36] The 10-year period began to run at that time for all three concurrent sentences.

¶15 Spires' subsequent period of incarceration was for failing to pay LFOs and changing his address without notice to or permission of DOC.[37] Spires' subsequent period of incarceration was not for the crime of unlawful issuance of bank checks or drafts for which the restitution was initially ordered. Though there is an outstanding bench warrant for Spires, he has not otherwise been placed in total confinement in relation to the 1992 convictions. None of these events tolls or otherwise affects the running of the 10-year period.

¶16 Spires' "release from total confinement," which triggered the 10-year limitations period, was on December 13, 1992.[38] As a result, the State had until December 13, 2002, to obtain an extension of jurisdiction over Spires under RCW 9.94A.753(4) and .760(4). It failed to do so. Thus, the court no longer has jurisdiction to enforce the unpaid LFOs against Spires.

¶17 The State argues that because there is an outstanding bench warrant in effect in this case, the last date of release from "total confinement" cannot yet be determined. According to the State, the term of total confinement can

---

[34] *Id.*

[35] Petitioner's Supplemental Brief, Appendix A at 1.

[36] Petitioner's Supplemental Brief, Appendix B at 1.

[37] Petitioner's Supplemental Brief, Appendix C at 1.

[38] Petitioner's Supplemental Brief, Appendix B at 1.

only be determined once Spires is apprehended and again confined. Thus, the State argues that "total confinement" includes all periods of incarceration related to the original crime, including future terms of total confinement following expiration of the original sentence term.[39] We cannot agree with this argument, which is akin to the tolling argument rejected in *Olson*.

¶18 The State also argues that the term "total confinement" is ambiguous. We disagree because the State has failed to show that there is more than one reasonable interpretation of the statute before us.[40] The only reasonable interpretation of the text is that "term of confinement" refers to the confinement directed by the judgment and sentence.[41]

¶19 The State next argues that Spires' proposed interpretation of the statute leads to the "absurd consequence" that "[a] defendant need only successfully ignore the court's [restitution] orders for ten years and the court's jurisdiction to enforce those orders will expire."[42] The supreme court addressed this concern in *State v. Gossage*.[43] The court noted that the legislature "grappled with" this issue—that the limitations period might discourage payment and defeat the punitive and restorative purposes of the restitution obligation—when it amended the restitution statute in 2000.[44]

The legislature . . . corrected that problem by extending the court's jurisdiction for the lifetime of the offender or until all

[39] Supplemental Brief of Respondent at 6.

[40] *Budget Rent A Car Corp. v. Dep't of Licensing*, 144 Wn.2d 889, 900, 31 P.3d 1174 (2001) ("An ambiguity arises when a term is fairly susceptible to two or more reasonable interpretations.").

[41] *Sappenfield* II, 138 Wn.2d at 593 (concluding that the phrase "release from total confinement" means release from confinement for the crime for which restitution was ordered).

[42] Supplemental Brief of Respondent at 6.

[43] 165 Wn.2d 1, 195 P.3d 525 (2008), *cert. denied*, 129 S. Ct. 2842 (2009).

[44] *Id.* at 8 (citing H.B. REP. on Substitute S.B. 6336, 56th Leg., Reg. Sess. (Wash. 2000)).

LFOs are satisfied. However, it chose to do so for offenses committed only from July 1, 2000, forward. As a corollary, the legislature left the limitation period for offenses committed before July 1, 2000, unchanged.[45]

Thus, our construction of the statute does not lead to absurd consequences. If the State believed that Spires was not living up to his responsibilities under the restitution order, it could have moved for an extension of the term, provided it did so in a timely fashion. We are not authorized to rewrite the statute under the guise that the restorative and punitive purposes of restitution are thwarted.

¶20 The State cites the principle that the restitution statute must be broadly construed in order to carry out the legislature's intent of providing restitution to crime victims.[46] The State made the same type of argument in *Gossage*, and the supreme court considered and rejected the implicit assumption that the legislature had not already grappled with and resolved that issue when it amended these statutes.[47]

¶21 Finally, the State argues that *Sappenfield* is distinguishable.[48] There, the court concluded " 'the phrase "release from total confinement" can only mean release from confinement for the crime for which restitution is ordered' " and did not refer to confinement in unrelated cases.[49] The State argues that Spires' case is different because "any period of confinement for failure to comply with the court's sentence is still confinement for the crime for which restitution was ordered."[50] Therefore, according to the State, **any** total confinement that results from the outstanding

---

[45] *Id.* (citation omitted) (citing LAWS OF 2000, ch. 226, §§ 3, 4).

[46] Supplemental Brief of Respondent at 5 (citing *State v. Hennings*, 129 Wn.2d 512, 519, 919 P.2d 580 (1996)).

[47] *Gossage*, 165 Wn.2d at 7-8.

[48] Supplemental Brief of Respondent at 7.

[49] *Sappenfield* II, 138 Wn.2d at 593 (quoting *Sappenfield* I, 92 Wn. App. at 736).

[50] Supplemental Brief of Respondent at 7.

bench warrant in Spires' case would still be confinement for the crime for which restitution was ordered.[51] This is not persuasive.

¶22 By this reasoning, "release from total confinement" would never mean what it says. Instead, it would effectively mean "completion of all sentence conditions," words the legislature did not use in these statutes. Because the legislature did not use these words, we reject the State's argument.

¶23 In sum, the plain words of the statute mandate that after the expiration of the 10-year limitations period following the term of total confinement for which a defendant is sentenced, the court has no power, absent a timely extension, to enforce unpaid LFOs. Spires is entitled to the relief he requests.

¶24 We grant the personal restraint petition.

BECKER and ELLINGTON, JJ., concur.