[No. 48707–3. En Banc. April 21, 1983.]

*In the Matter of* ELOISE CROSS.

LEON S. DIAMOND, ET AL, *Respondents,* v. ELOISE CROSS, *Appellant.*

*Peter Offenbecher* of *Seattle–King County Public Defender Association,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Maureen Hart, Assistant,* for respondents.

UTTER, J.—Appellant, Eloise Cross, was a gravely disabled person involuntarily committed for less restrictive

outpatient treatment pursuant to RCW 71.05.320.[1] Respondents sought revocation of Ms. Cross' less restrictive treatment, on the ground that she had failed to comply with its conditions. Court Commissioner Krilich found that Ms. Cross had complied with the conditions but nonetheless ordered her returned to inpatient status because it would be dangerous to allow her to remain free. We reverse on two alternative grounds: (1) The Court Commissioner had no authority, absent a finding of noncompliance, to issue the order; and (2) Ms. Cross was given inadequate notice of the grounds on which respondents sought her return to inpatient status.

Ms. Cross was originally detained on January 2, 1981. Statutory civil commitment procedures were then followed which resulted in a court order for 90 days of involuntary treatment on a less restrictive basis. The order also required Ms. Cross to comply with several conditions: namely, that she return to her own home, that she take all prescribed medications, and that she attend regularly scheduled therapy sessions.

On February 10, respondents once again detained Ms. Cross and on February 13 filed a "Petition for Revocation of Less Restrictive Placement" with the court. The petition appeared to state only one ground for detention, that Ms. Cross had failed to comply with the condition that she take her prescribed medication. At the hearing pursuant to respondents' petition, the Court Commissioner found that respondents had not shown that Ms. Cross had failed to comply with the condition that she take her medication. Despite this finding, the Court Commissioner still chose to

---

[1]In pertinent part, RCW 71.05.320 reads:

"If the court or jury finds that grounds set forth in RCW 71.05.280 have been proven, but finds that treatment less restrictive than detention will be in the best interest of the person or others, then the court shall remand him to the custody of the department of social and health services or to a facility certified for ninety day treatment by the department of social and health services or to a less restrictive alternative for a further period of less restrictive treatment not to exceed ninety days from the date of judgment."

revoke Ms. Cross' less restrictive treatment, citing the intervening deterioration in her condition and the danger of permitting her to continue treatment on an outpatient basis.[2]

Following the Court Commissioner's decision, Ms. Cross moved the Superior Court for an order of revision pursuant to RCW 2.24.050. The court denied the motion, ruling that, while the statute governing civil commitment proceedings authorizes "revocation" of less restrictive treatment solely for failure to comply with the conditions attached to such treatment, the Court Commissioner had inherent power to "modify" his order. The Superior Court construed the Court Commissioner's decision as such a modification. The court also concluded that respondents' failure to give Ms. Cross notice that modification on the ground of general deterioration would be an issue did not violate her procedural rights because the issue could not have been anticipated.

I

Initially, respondents argue that this case is moot. The detention which is the subject of this appeal has long since ended. Indeed, since her release, Ms. Cross has been detained under three successive 180–day commitment orders. The first, issued soon after the expiration of the 90–day order involved herein, permitted treatment on a less restrictive basis, but that less restrictive placement was revoked within a month. The second and third orders required inpatient treatment. Between February 10, 1981, when Ms. Cross was first detained for the revocation at issue here, and July 2, 1982, the most recent date for which we are aware of her status, Ms. Cross appears to have been almost continually detained at Western State Hospital. There she may well remain even today.

We agree that this case is moot. A case is moot if a

---

[2]While respondents additionally argued at the hearing that Ms. Cross had become so disabled that she would *in the future* be unable to comply with her release conditions, the Commissioner made no specific findings on this issue.

court can no longer provide effective relief. *State v. Turner,* 98 Wn.2d 731, 658 P.2d 658 (1983). Since the detention which is the subject of this appeal has already ended, we cannot provide the most basic relief which Ms. Cross originally sought. Moreover, while most civil commitment appeals will be saved from mootness by the significant and adverse collateral consequences to which commitment gives rise (*see, e.g., In re Ballay,* 482 F.2d 648, 651–53 (D.C. Cir. 1973); *cf. State v. Turner, supra* at 733 (citation and resulting imprisonment for civil contempt)), such consequences do not exist here. The invalidation of less than 60 days out of the minimum year and a half during which Ms. Cross has been detained seems to us of minimal significance.

Even where a case is moot, however, we may nonetheless decide it if it involves "matters of continuing and substantial public interest". *Sorenson v. Bellingham,* 80 Wn.2d 547, 558, 496 P.2d 512 (1972). The criteria to be considered in determining whether a sufficient public interest is involved are: (1) the public or private nature of the question presented; (2) the desirability of an authoritative determination which will provide future guidance to public officers; and (3) the likelihood that the question will recur. *Sorenson,* at 558.

We believe these criteria militate in favor of review in the present case. The central issues are whether the Commissioner had authority to act in the manner he did and whether the notice given Ms. Cross was sufficient. The question of a judicial officer's authority is certainly public in nature. An awareness on the part of such officers of the scope of their authority is crucial and consideration of the arguments made before us and the statutory scheme governing civil commitment convinces us that clarification is necessary. Similarly, it is important that mental health professionals such as respondents understand the nature and purpose of the notice which they must provide to committed persons whose less restrictive treatment they seek to revoke. Finally, the likelihood of recurrence is high. The

approach taken here by respondents and the lower court is procedurally more convenient, though such convenience is gained at the expense of the rights of committed persons such as Ms. Cross. Absent some direction to the contrary, we think the temptation of this convenience is likely to encourage similar action in the future.

## II

There exist two provisions which arguably grant a court the authority to revoke or modify a prior order for involuntary psychiatric treatment on a less restrictive basis. The first such provision is RCW 71.05.340(3), which specifically provides for revocation of less restrictive treatment if the patient violates the conditions of his or her release. The second arguably applicable provision is RCW 2.28.150, which generally allows the courts to adopt suitable procedures to effect their jurisdiction when no procedures are specifically provided.[3]

RCW 71.05.320(1) provides that if a person on

---

[3]The Superior Court's characterization of the Court Commissioner's decision as a "modification" under RCW 2.28.150 rather than a "revocation" under RCW 71.05.340(3) appears erroneous. The parties and the court consistently used the term "revocation" and the only statutory provision referred to was RCW 71.05-.340.

This does not necessarily relieve us of the duty to consider both statutes, however, for "where a judgment or order is correct, it will not be reversed merely because the trial court gave the wrong reason for its rendition". *Ertman v. Olympia*, 95 Wn.2d 105, 108, 621 P.2d 724 (1980). Rather, the reviewing court may affirm on "any theory supported by the pleadings and the evidence." *Davis v. Niagara Mach. Co.*, 90 Wn.2d 342, 348, 581 P.2d 1344 (1978).

Here, there is clearly sufficient evidence in the record to consider the "modification" theory and, while it was not argued before the Court Commissioner, the parties have had ample opportunity to argue it before the Superior Court and this court. We are somewhat concerned, however, that the issue was not presented by the petition for detention—Ms. Cross might well have presented different evidence had she been confronted with both the "modification" and "revocation" theories. We would therefore be somewhat hesitant to affirm on the "modification" theory. *Cf. Bernal v. American Honda Motor Co.*, 87 Wn.2d 406, 414, 553 P.2d 107 (1976) (when affirming summary judgment on alternative ground, "caution must be exercised so as not to deny the appellant the right to dispute the facts material to the new theory"). Yet we will address it here to provide the guidance which brings us to address this otherwise moot case in the first place. It does not prejudice Ms. Cross as we reverse in any event.

less restrictive treatment fails to adhere to the conditions of such treatment, the designated county mental health professional may detain the person and petition the court for return to inpatient status. The detainee is then entitled to a hearing. RCW 71.05.320(1); RCW 71.05.340(3). The issues to be considered at the hearing are expressly delineated by the statute.

> The issues to be determined shall be whether the conditionally released person did or did not adhere to the terms and conditions of his release; and, *if he failed to adhere to such terms and conditions,* whether the conditions of release should be modified or the person should be returned to the facility.

(Italics ours.) RCW 71.05.340(3). RCW 71.05.340(3) permits return to inpatient status *only* if the court finds a violation of the conditions of release. Indeed, by failing to argue this point, respondents appear to concede it.

Instead, respondents argue that the courts have inherent power under RCW 2.28.150 to "modify" less restrictive treatment orders. That statute provides:

> When jurisdiction is, by the Constitution of this state, or by statute, conferred on a court or judicial officer all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding is not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the laws.

Respondents contend that no statute specifically directs a court how to proceed when faced with a situation such as that which arose in the present case. Further, they argue, the Court Commissioner's action, when faced with a patient whose condition had severely deteriorated despite adherence to her release conditions, was highly consistent with the legislative goal of "restor[ing such persons] to normal mental condition as rapidly as possible . . . with as little formality as possible". RCW 71.02.900.

We must reject respondents' argument. RCW 2.28.150 is to be construed strictly here because a deprivation of liberty is involved. *See In re Carson,* 84 Wn.2d 969, 973, 530

P.2d 331 (1975). The statute is applicable only if (1) jurisdiction is otherwise conferred on the court, and (2) no course of proceeding is specifically pointed out. Neither of these conditions is satisfied here. Moreover, even if these conditions were satisfied, the mode of proceeding adopted by the Court Commissioner was not that "most conformable to the spirit of the laws". RCW 2.28.150.

Jurisdiction has two elements—jurisdiction over the person and jurisdiction over the subject matter. *State v. Swanson,* 16 Wn. App. 179, 189, 554 P.2d 364 (1976). The latter aspect of jurisdiction has two subelements—jurisdiction over the class of actions in question and jurisdiction to determine the particular issues presented. *State ex rel. New York Cas. Co. v. Superior Court,* 31 Wn.2d 834, 840, 199 P.2d 581 (1948). The instant proceeding arose out of a petition for detention pursuant to RCW 71.05.340(3). That provision specifically states the issues to be decided, thereby limiting the jurisdiction invoked by such a petition. The issue of whether the detainee should be returned to inpatient treatment is included *only* if the court finds that the detainee has failed to adhere to the conditions of his or her release. Since the Court Commissioner did not make such a finding in the case at bar, he had no jurisdiction to order Ms. Cross returned to the hospital for inpatient treatment.

Neither is the second condition precedent of RCW 2.28-.150, that there be no "course of proceeding . . . specifically pointed out by statute", satisfied here. MPR 4.4 expressly provides that: "A mental health professional may commence new proceedings for 72–hour detention pursuant to RCW 71.05.150, notwithstanding an order of less restrictive alternative treatment under RCW 71.05.320 or a grant of conditional release pursuant to RCW 71.05.340." Thus there does exist a court rule by which "the course of proceeding is . . . specifically pointed out". RCW 2.28.150. Respondents' assertion at oral argument that RCW 2.28-.150 refers only to a course of proceeding pointed out by statute, as opposed to court rule, is misplaced. For most

purposes, court rules and statutes are treated identically. *See, e.g., State ex rel. Schillberg v. Everett Dist. Justice Court,* 90 Wn.2d 794, 797, 585 P.2d 1177 (1978) (same principles of construction applied to court rules and statutes); *Yellam v. Woerner,* 77 Wn.2d 604, 607–08, 464 P.2d 947 (1970) (identical retroactivity rules applied). We see no reason, and respondents have suggested none, why a distinction should be made here.

Finally, even if RCW 2.28.150 was applicable, the Court Commissioner did not proceed suitably here. The statute directs the court (or commissioner) to adopt procedures "which may appear most conformable to the spirit of the laws." RCW 2.28.150. MPR 4.4 evidences an intent that persons for whom less restrictive treatment is permitted and who abide in good faith by the conditions imposed upon them shall be proceeded against no differently than other individuals.[4] The mode of proceeding "most conformable to the spirit of the laws", therefore, is to dismiss the revocation proceeding and direct respondents, if they desire to do so, to initiate a standard commitment proceeding pursuant to RCW 71.05.150.

At oral argument, it was suggested that the rule we have enunciated might discourage the use of less restrictive treatment alternatives. Such a contention, however, misconstrues that section of the commitment statute providing for such treatment. It does not make less restrictive treatment discretionary, but *requires* it whenever the trier of fact finds that such treatment "will be in the best interest of the [detainee] or others". RCW 71.05.320(1). Indeed, though the point is somewhat redundant in light of our statute, it is interesting to note that the use of least restrictive treatment appears to be constitutionally mandated. *See O'Connor v. Donaldson,* 422 U.S. 563, 575–76, 45 L. Ed.

---

[4]The difference between original commitment proceedings and revocation proceedings is not merely one of form. In particular, the respondent in a proceeding of the former type has a right to jury trial not provided in a revocation hearing. *Compare* RCW 71.05.200 *with* RCW 71.05.340(3).

2d 396, 95 S. Ct. 2486 (1975); *Dilmore v. Stubbs,* 636 F.2d 966, 969–70 (5th Cir. 1981) and cases cited therein; *Covington v. Harris,* 419 F.2d 617, 623–24 (D.C. Cir. 1969).

### III

Even if a court could modify its less restrictive treatment order at any time without the initiation of new commitment proceedings, such modification here violated Ms. Cross' procedural rights. In particular, she was not given the notice required by statute.

RCW 71.05.340(3) provides that any person who is detained for revocation of conditional release or revocation of a less restrictive treatment order "shall have the same rights with respect to notice . . . as for an involuntary treatment proceeding". In such an original proceeding the detainee must be provided with a copy of the petition for detention. *See* RCW 71.05.300. That petition must "summarize the facts which support the need for further confinement" and "describe in detail the behavior of the detained person which supports the petition". RCW 71.05-.290(2).

Though this general language is somewhat vague, we construe it as requiring a statement of all alternative grounds on which revocation or modification is sought. Such a construction is supported by two fundamental principles of statutory construction. The first of these is the rule that a statute must be construed so as to effectuate its underlying purpose. *See, e.g., State v. Eilts,* 94 Wn.2d 489, 493, 617 P.2d 993 (1980). The central purpose of providing a person with "notice" is "to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 14, 56 L. Ed. 2d 30, 98 S. Ct. 1554 (1978); *see, e.g., Ashley v. Superior Court,* 83 Wn.2d 630, 635, 521 P.2d 711 (1974). To accomplish this purpose, the notice must indicate the issues which will be addressed at the hearing.

A second principle of statutory construction pertinent here is the rule that "where a statute is susceptible of sev-

eral interpretations, some of which may render it unconstitutional, the court, without doing violence to the legislative purpose, will adopt a construction which will sustain its constitutionality if at all possible to do so." *State ex rel. Morgan v. Kinnear,* 80 Wn.2d 400, 402, 494 P.2d 1362 (1972). A number of federal courts have ruled that the due process clause requires that a person whom the state seeks to have civilly committed must be given adequate notice, including notice of the grounds upon which the proposed detention is justified. *See Suzuki v. Quisenberry,* 411 F. Supp. 1113, 1127 (D. Hawaii 1976) (must state "the alleged conduct or condition upon which the proposed detention is based"); *Doremus v. Farrell,* 407 F. Supp. 509, 515 (D. Neb. 1975) ("nature of grounds, reasons and necessity for the emergency detention"); *Lynch v. Baxley,* 386 F. Supp. 378, 388 (M.D. Ala. 1974) ("alleged factual basis for the proposed commitment" *and* "the legal standard upon which commitment is authorized"), *rev'd on other grounds,* 651 F.2d 387 (1981); *Lessard v. Schmidt,* 349 F. Supp. 1078, 1092 (E.D. Wis. 1972) ("basis for [patient's] detention" *and* "standard upon which he may be detained"), *vacated on other grounds,* 414 U.S. 473, 38 L. Ed. 2d 661, 94 S. Ct. 713 (1974); Comment, *Progress in Involuntary Commitment,* 49 Wash. L. Rev. 617, 633 (1974); *cf. In re Gault,* 387 U.S. 1, 33, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967) (juvenile delinquency proceedings must be preceded by notice which "'set[s] forth the alleged misconduct with particularity"). By construing our statute as we have, we avoid these constitutionally murky waters.

In the present case, the Superior Court found that, prior to her hearing, Ms. Cross was given notice that respondents sought revocation of her less restrictive treatment under RCW 71.05.320 but was not given notice that her return to inpatient status was sought on any other ground. This failure to state each of the alternative grounds on which respondents sought to detain Ms. Cross violated the statu-

tory notice requirements described above.[5] Had she been given adequate notice, Ms. Cross might have presented her defense quite differently. For example, she might have affirmatively sought to prove or have stipulated to the fact that her deterioration was due to failure to take her medication and then sought to convince the Court Commissioner to simply modify the conditions of her release to require that she come into the hospital to take her medication.

The Superior Court ruled that respondents' failure to provide complete notice did not violate statutory requirements because neither the Court Commissioner nor respondents anticipated that other grounds for detention existed. We cannot agree for two reasons. First, respondents could have anticipated other grounds. They knew that Ms. Cross' condition had seriously deteriorated. While they believed this was due to her failure to take her medication, they could have realized that one other possibility was that the medication was simply not working. More importantly, the Superior Court's ruling misconstrues the purpose of notice. It is not intended solely to assure good faith on the part of the State, but, as noted above, is intended to permit the patient to adequately prepare for the hearing. This opportunity Ms. Cross did not have and hence the notice provided her was inadequate.

In sum, we reverse the court below on two alternative grounds. First, the court below had no authority, absent a finding that Ms. Cross had not adhered to the conditions attached to her less restrictive treatment or initiation of a second original commitment proceeding, to order Ms. Cross returned to inpatient status. Second, even had the lower

---

[5]Interestingly, the factual situation here is almost exactly analogous to that in *Cole v. Arkansas,* 333 U.S. 196, 92 L. Ed. 644, 68 S. Ct. 514 (1948). There, the Supreme Court reversed the petitioners' conviction under one section of a statute when they had been charged solely with violating another section. *Cole,* at 201–02. Though *Cole* was a criminal case, the Supreme Court has stated that, at least in juvenile delinquency proceedings, due process requires "notice which would be deemed constitutionally adequate in a civil or criminal proceeding." *In re Gault, supra* at 33. One of the examples cited in *Gault* was *Cole. Gault,* at 33 n.53.

court had such authority, respondents did not provide Ms. Cross with notice adequate to satisfy statutory requirements.

WILLIAMS, C.J., STAFFORD, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DIMMICK, J. (dissenting)—I respectfully dissent from the analysis of the majority except for that portion which admits this issue is moot. Majority opinion, at 376. I perceive the issue to be whether the Court Commissioner properly exercised his common law or statutory power (*see* RCW 2.28.150) in modifying appellant's commitment order from a less restrictive treatment order to an inpatient treatment order. I would hold that the decision of the Court Commissioner, which was based on facts and circumstances unique to appellant, was proper.

The propriety of that decision can only be determined in the context of the specific facts of this case, *i.e.,* the degree of deterioration in appellant's mental condition at the time the court modified or revoked its order. This court's opinion today severely limits and narrowly defines procedure in mental illness cases by comparing them to criminal cases. I fear the result may well be that dangerous or ill patients will be put on the streets, however briefly, contrary to the legislative intent of the statute, expressed as follows:

> The provisions of this chapter shall be liberally construed so that persons who are in need of care and treatment for mental illness shall receive humane care and treatment and be restored to normal mental condition as rapidly as possible with an avoidance of loss of civil rights where not necessary, and with as little formality as possible, still preserving all rights and all privileges of the person as guaranteed by the Constitution.

RCW 71.02.900.

In my opinion, this case is similar to our unanimous decision in *State v. Keller,* 98 Wn.2d 725, 657 P.2d 1384 (1983), wherein we held a court may depart from a literal

reading of statutory language so as to avoid strained or absurd consequences and to give effect to the Legislature's intent. Although decided on a different statute (RCW 10.77.150), our reasoning regarding legislative intent should be the same.

In the *Keller* case the appellant also argued that she had not violated any express condition of her release and therefore revocation was improper. We disagreed. Our *Keller* court reiterated prior case law to interpret legislative intent that the State has a legitimate interest in ensuring the safety and security of its citizens by the commitment of individuals who are dangerous to themselves or society.

Here without a doubt the appellant was a serious danger to herself. All of the witnesses testified she was unable to care for her basic needs including taking her medicine. Ms. Cross' final words at the hearing were, "I want to stay here." I would affirm the trial court's conclusion that the Court Commissioner, observing appellant, took appropriate action pursuant to his inherent powers.