IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | |
| | ) | No. 33763-4-III |
| C.A.E, | ) | |
| | ) | |
| | ) | |
| Appellant | ) | UNPUBLISHED OPINION |

KORSMO, J. — C.A.E. appeals from an order committing him to 180 days of involuntary treatment at Eastern State Hospital (ESH). He contends that the State was required to limit its proof efforts to only one prong of the commitment statute and that the evidence did not support the commitment order. We affirm.

## FACTS

Due to the nature of the evidentiary sufficiency challenge, we need to discuss the facts of C.A.E.'s encounters with central Washington mental health treatment agencies in some detail. This case has its original genesis in a complaint by a business that C.A.E. was eating out of its dumpster. He was jailed, at the Okanogan County Jail, for trespass. While in custody, C.A.E. refused to participate in the booking process, declined to attend to his hygiene, made delusional and violent statements, and was generally

uncommunicative. He was in custody at the jail for approximately two-and-a-half months.

At an April 14, 2015 mental health evaluation, the treating physician noted that C.A.E. was unwilling to participate in the examination and appeared to suffer from schizophrenia and paranoia. A petition for initial detention was filed in Okanogan County on April 17, 2015. The petition was granted. Okanogan County then dropped all charges against C.A.E. when he was found incompetent to stand trial. He was moved to Mid Valley Hospital, where he underwent mental and physical examinations.

When the lab results came back with multiple abnormalities, he was moved to Bridges Evaluation and Treatment Center in Yakima. His blood pressure was so high the medical doctors feared it would interfere with organ function.

On April 21, 2015, C.A.E.'s treating mental health practitioner petitioned Yakima County for a 14-day detention because C.A.E. exhibited delusions, psychosis, and paranoia, refused to take his medicine, and made verbal threats of violence to those around him. On April 24, 2015, a Yakima County court commissioner found that C.A.E. was gravely disabled and ordered the 14-day detention. On May 13, 2015, this detention extended to 90 days of confinement. On June 2, 2015, C.A.E. transferred to ESH.

On July 31, 2015, Dr. Laura Seymour, C.A.E.'s treating psychiatrist and professional designee of ESH, filed a petition in Spokane County Superior Court seeking to extend the detention to 180 days, stating that C.A.E. continued to be gravely disabled

2

and that no less restrictive alternative treatment would suffice for his care. The petition was supported by the affidavit of Patricia Gunderson, Ph.D., a licensed psychologist who examined C.A.E. at ESH. She noted, for example, that C.A.E. denied any history of mental illness and was surprised that his doctors were concerned about his high blood pressure, as C.A.E. considered himself "young and healthy." C.A.E. received personal service of notice of the hearing on August 3, 2015; the hearing was set for August 6, 2015.

At the hearing, the State called Dr. Seymour, who testified that C.A.E. remained paranoid and was uninterested in attending to his hygiene or other activities of daily living. She stated that his paranoia made him disinclined to apply for government benefits, and he preferred to live as a transient. C.A.E. then testified on his own behalf, stating he was completely sane, no longer suffered from mental illness, and that his troubles arose from the police who harassed him.

At the conclusion of the hearing, the commissioner found C.A.E. continued to be gravely disabled and ordered 180 days of confinement at ESH. C.A.E. timely filed his appeal on September 3, 2015.

On October 7, 2015, Dr. Seymour filed a motion recommending a less restrictive alternative because C.A.E. had demonstrated stability, treatment compliance, and was ready to leave the hospital setting. On October 9, 2015, a different Spokane County

commissioner released C.A.E. to the less restrictive alternative treatment of Carlyle Care Center in Spokane.

## ANALYSIS

This appeal presents issues concerning the notice of the pending commitment hearing and the sufficiency of the evidence to support the commitment order.[1] We address those two concerns in the order stated.

*Notice*

C.A.E. argues that because the petition form did not state why the mental health professionals believed he was gravely disabled, he received insufficient notice of the case against him. He did not seek clarification at the trial court and cites no relevant authority limiting the State to one method of proving its case. Accordingly, we affirm on this issue.

"Generally, under the statute, RCW 71.05, persons may be involuntarily committed for treatment of mental disorders if, as a result of such disorders, they either (1) pose a substantial risk of harm to themselves, others, or the property of others, or (2) are gravely disabled." *In re LaBelle*, 107 Wn.2d 196, 201-202, 728 P.2d 138 (1986). *See* RCW 71.05.150(1). In this case, C.A.E. was involuntarily committed under the gravely disabled standard. In turn, that standard can be established when, as a result of a mental

---

[1] C.A.E. also preemptively argues that the appeal is not moot. Since the State does not contend otherwise, we will not address that contention.

disorder, a person is either "in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety" or "manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety." RCW 71.05.020(17).

Because involuntary commitment for mental disorders is a "massive curtailment of liberty" requiring due process protections, the notice requirements are strictly construed. *Humphrey v. Cady*, 405 U.S. 504, 509, 92 S. Ct. 1048, 31 L. Ed. 2d 394 (1972); *In re Cross*, 99 Wn.2d 373, 382, 662 P.2d 828 (1983). The commitment statute provides that the detainee must be provided with a copy of the petition for detention. RCW 71.05.300; *In re Det. of Dydasco*, 135 Wn.2d 943, 952, 959 P.2d 1111 (1998). The petition must "summarize the facts which support the need for further confinement," "describe in detail the behavior of the detained person which supports the petition," and require "a statement of all alternative grounds" on which it is based. RCW 71.05.290(2); *Cross*, 99 Wn.2d at 382.

The purpose of providing notice is to "apprise the affected individual of, and permit adequate preparation for, an impending hearing." *Id.* To accomplish this purpose, the notice must indicate the issues the State will address at the hearing; if the notice meets these standards, the affected person has received adequate notice and their due process rights were not violated. *Id.*

5

C.A.E. argues that the complaint is defective for failing to specify which definition of "gravely disabled" the State intended to prove at trial. However, he cites no authority limiting the State to one means of proving his disability. The statute permits proof of two different means of establishing a grave disability. Nothing in the statute or in our case law limits the State to attempting to prove the existence of a grave disability by only one method. The petition form is not defective for failing to select a single alternative.

A petition can still be unconstitutionally vague. Because the standard form used does not require the State to identify which prong of RCW 71.05.020(17) it is alleging when identifying a person as gravely disabled and does not contain specific details of the case, the statutorily required details must be found in the affidavits of the mental health providers.

That notice was provided here. In the affidavits attached to the petition, the State summarized its version of events leading up to C.A.E.'s detention in Okanagan, Yakima, and Spokane counties, and described his numerous paranoid, delusional outbursts, his failure to attend to his hygiene and healthcare needs, and his lack of understanding regarding trespassing on others' property and the law enforcement attention it draws; the State psychologists discussed the likelihood that C.A.E. would fail to thrive in an outpatient setting and concluded no less restrictive treatment than commitment at ESH would suffice. *See* RCW 71.05.290(2); *Cross*, 99 Wn.2d at 382. The affidavits complied

with the requirements of RCW 71.05.290 in terms of factual specificity and discussion of the grounds for support of C.A.E.'s commitment.

Dr. Seymour's testimony at the hearing did not assert any new grounds for commitment not raised in the petition and affidavit. Accordingly, the information provided to C.A.E. in the petition was sufficient to inform him of the issues to be raised in the hearing and provided him the time in which to prepare. *Cross*, 99 Wn.2d at 382. Due process notice requirements were satisfied.

*Sufficiency of the Evidence*

C.A.E. also argues that the evidence did not support the commitment order. The evidence supported both prongs of the gravely disabled standard.

The burden of proof to support a 180-day commitment is clear, cogent, and convincing evidence. RCW 71.05.310. That standard "means the ultimate fact in issue must be shown by evidence to be 'highly probable.'" *LaBelle*, 107 Wn.2d at 209. The reviewing court will not disturb the trial court's findings of "gravely disabled" if they are "supported by substantial evidence." *Id.* If the findings are supported by substantial evidence, the court then determines if the findings support the trial court's conclusions of law and judgment. *Id.* Commitment is justified if either prong of the "gravely disabled" standard is met. *Id.* at 202.

To show that an individual is "in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety," RCW

7

71.05.020(17)(a), "the State must present recent, tangible evidence of failure or inability to provide for such essential human needs as food, clothing, shelter, and medical treatment which presents a high probability of serious physical harm within the near future unless adequate treatment is afforded." *LaBelle*, 107 Wn.2d at 204-205. The "failure or inability to provide for these essential needs must be shown to arise as a result of mental disorder and not because of other factors." *Id.* at 205.

In order to find someone gravely disabled under RCW 71.05.020(17)(b), the evidence presented must include recent proof of significant loss of cognitive or volitional control, and it "must reveal a factual basis for concluding that the individual is not receiving or would not receive, if released, such care as is essential for his or her health or safety." *LaBelle*, 107 Wn.2d at 208.

The trial court's findings of fact, conclusions of law, and order are contained in a form document. Clerk's Papers (CP) at 38-43. Although the document lacks detailed findings of fact, it incorporates the petition and the affidavits of the ESH medical professionals as findings. CP at 39-40. C.A.E. assigns error to the allegations of the petitions and attached affidavits as incorporated into the trial court's findings of fact.

The court did not err in finding C.A.E. gravely disabled. The affidavits, and the testimony at the hearing, including testimony by C.A.E. himself, established that C.A.E. suffered from unspecified paranoia and schizophrenia; had dangerously high blood pressure; denied he had a mental disorder; intended to not take medications or to seek

8

treatment if released; failed to complete his activities of daily living; declined to apply for benefits necessary for his health and well-being; and, would continue to live a transient lifestyle, increasing his chances of run-ins with small-town law enforcement. For example, his lack of understanding regarding the damage high blood pressure had on his kidneys and his need for medication, evidenced his failure to tend to his health care needs, presented a high probability of organ damage. *LaBelle*, 107 Wn.2d at 204-205. Similarly, his ongoing paranoid schizophrenic episodes, coupled with his statements and testimony that it is not necessary for him to take antipsychotic medications, led the court to find that he would not receive essential care if released. *Id*. at 208.

The evidence supported the commitment order.

Affirmed

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____          _____
Fearing, C.J.                                   Lawrence-Berrey, J.

9