**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In the Matter of the Detention of: | No. 56259-6-II |
| J.B., | |
| Appellant. | UNPUBLISHED OPINION |

CRUSER, A.C.J. – JB has been undergoing involuntary treatment for schizophrenia at Western State Hospital since 1988. When his most recent commitment was almost over, two medical professionals with Western State petitioned to retain him for 180 days of additional treatment on the ground that he remained gravely disabled. JB requested and was granted a jury trial.

Although the petition listed only one ground for JB's commitment, the jury instructions included a reference to an alternate ground for involuntary commitment. Neither party objected to the instruction. The alternate ground was not argued or mentioned by the petitioners at trial. The jury determined that JB was gravely disabled and that he should remain at Western State Hospital for an additional 180 days.

JB now appeals, arguing that the jury instruction was manifest constitutional error amounting to a denial of his due process right to notice of all alternative grounds that would be

relied on by the petitioner. We hold that the jury instruction was not manifest constitutional error.

Accordingly, we affirm JB's commitment.

## FACTS

For over 30 years, JB has been hospitalized at Western State Hospital, where he is being treated for schizophrenia and Parkinson's disease. He was initially admitted in 1988 after killing his father, who JB believed prostituted him and sold his colon to the Bonnano crime family in New York.

Near the end of his most recent term of commitment, two Western State Hospital medical professionals petitioned the court to retain JB for 180 additional days of involuntary treatment on the ground that JB was gravely disabled.[1] JB requested a jury trial. At trial, Doctors Elwyn Hulse and Leslie Sziebert testified to JB's schizophrenia diagnosis, his delusional thinking, and the risks they believed JB would pose to himself and others if released. They also testified to their opinion that JB was not prepared for transfer to a less restrictive alternative form of treatment and to the progress they believed JB would need to make to prepare for such a transfer.

The jury was presented with thirteen pages of instructions and a two-page verdict form. Jury "Instruction No. 3" read:

> Before the respondent [JB] can be involuntarily treated for a period not to exceed 180 days, the petitioner must prove by clear, cogent, and convincing evidence that the respondent has a behavioral health disorder and that he:
> Continues to be gravely disabled or
> *is in need of assisted outpatient behavioral health treatment.*
> If you find that the respondent should be involuntarily treated, you must then decide whether the best interest of the respondent or others will be served by a less restrictive treatment that is an alternative to detention. Before the respondent can be detained for a period not to exceed 180 days, it must be proved by clear,

---

[1] First, Doctors Mohebat Sabeti and Elwyn Hulse filed a petition; then, an amended petition was filed by Doctors Leslie Sziebert and Elwyn Hulse.

cogent, and convincing evidence that no less restrictive treatment is in the best interest of the respondent or others.

Clerk's Papers (CP) at 88 (emphasis added) (capitalization omitted). "Gravely disabled" was defined in "Instruction No. 6," which read:

Gravely disabled means a condition in which a person, as a result of a behavioral health disorder:
(1) is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety, or
(2) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving or would not receive, if released, such care as is essential for his or her health or safety.

*Id.* at 91 (capitalization omitted). The verdict form asked three questions: whether JB had a behavioral health disorder, whether JB was gravely disabled, and whether JB's best interest would be served by remaining at Western State Hospital or by being transferred to a less restrictive form of treatment.

Before finalizing the instructions and verdict form, the court asked both attorneys if they had objections. JB's attorney had not yet reviewed the instructions but stated she was "not anticipating any [objections], assuming that they are straight from the [Washington Pattern Jury Instructions]." Verbatim Report of Proceedings (VRP) (Aug. 17, 2021) at 212. After JB's attorney reviewed the instructions, the court went through each instruction to determine if there were any objections. When discussing instruction 3, the court stated:

No. 3 is -- starts with "before the respondent, [JB], be involuntarily treated," and it has the options "that he continues to be gravely disabled" or "is in need of specialized mental health treatment." I believe that the brackets should be removed and the "and/or retained."

*Id.* at 217. Neither party objected to retaining the language referencing the alternate ground for commitment, "is in need of specialized mental health treatment." *Id.* The exact wording of the

alternate ground differed[2] in the ultimate jury instructions from what was discussed. In the instruction given to the jury, the alternate ground was worded as "or is in need of assisted outpatient behavioral health treatment." CP 88.

During deliberations, the jury raised a question regarding question number 2 on its verdict form, asking "Is it true that answering no to [question] 2 means that the respondent returns to W. State?" *Id.* at 99. Question number 2 asked: "Is [JB] gravely disabled as a result of his behavioral health disorder?" *Id.* at 97. Petitioners' counsel asked the court to provide a specific answer to the jurors, informing them that answering "no" to the question of whether JB was gravely disabled would mean he would not return to Western State Hospital. Counsel for both parties then expressed concern that the jury's question appeared to reflect a misunderstanding of the law. The court instructed the jury to review and follow its written instructions.

The jury found that JB had a behavioral health disorder, that JB was gravely disabled, and that remaining at Western State Hospital would be in JB's best interest. JB was therefore ordered to remain involuntarily confined at Western State Hospital for 180 days.

---

[2] Our review of the record revealed no explanation for the change from "is in need of specialized mental health treatment" to "is in need of assisted outpatient behavioral health treatment." *See* VRP (Aug. 17, 2021) at 217; CP at 88. The current pattern instructions match the instructions the jury was ultimately given. *See* 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 360.05 (7th ed. 2022).

ANALYSIS

A. LEGAL PRINCIPLES

*1. Involuntary Treatment Act*

If, at the end of a court-ordered 180-day period of confinement and treatment, a facility

believes an individual should remain committed, it may petition to have the individual committed

for another 180 days. RCW 71.05.320(6)(b).[3]

At the time of JB's trial, the grounds for such an extension included that the person

"[c]ontinues to be gravely disabled; or" "[i]s in need of assisted outpatient behavioral health

treatment." Former RCW 71.05.320(4)(d)-(e) (2021). However, the court "may not enter an order

for inpatient treatment" if the respondent's need for assisted outpatient behavioral health treatment

is the only ground petitioner successfully proves. Former RCW 71.05.320(6)(a) (2021). Instead,

that ground can support only "an order for less restrictive alternative treatment." Former RCW

71.05.320(6)(a) (2021).

An individual is gravely disabled if the individual is either "in danger of serious physical

harm resulting from a failure to provide for his or her essential human needs of health or safety"

or "manifests severe deterioration in routine functioning evidenced by repeated and escalating loss

of cognitive or volitional control over his or her actions and is not receiving such care as is essential

for his or her health or safety." Former RCW 71.05.020(21) (2020). An individual is "[i]n need of

assisted outpatient behavioral health treatment" if the individual

> (a) [h]as been committed by a court to detention for involuntary behavioral health
> treatment during the preceding thirty-six months; (b) is unlikely to voluntarily

---

[3] RCW 71.05.320 has been amended since JB's trial. *See* LAWS OF 2022, ch. 210, § 17; LAWS OF 2021, ch. 264, § 10. Except where these legislative amendments are material to the issues on appeal, we cite to the most recent versions of the statute.

participate in outpatient treatment without an order for less restrictive alternative treatment, based on a history of nonadherence with treatment or in view of the person's current behavior; (c) is likely to benefit from less restrictive alternative treatment; and (d) requires less restrictive alternative treatment to prevent a relapse, decompensation, or deterioration that is likely to result in the person presenting a likelihood of serious harm or the person becoming gravely disabled within a reasonably short period of time.

Former RCW 71.05.020(26).

### 2. RAP 2.5(a)

This court generally refuses to review an assignment of error when that error was not raised before the trial court. RAP 2.5(a). However, under RAP 2.5(a)(3), a party may raise a "manifest error affecting a constitutional right" for the first time on appeal. The party asserting error has the initial burden of showing that (1) the error was "truly of a constitutional dimension," and (2) the error was manifest. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

To show that an error is of a constitutional magnitude, the appellant must show that the asserted error implicates a constitutional interest as opposed to some other interest. *State v. Grimes*, 165 Wn. App. 172, 186, 267 P.3d 454 (2011). To show the error is manifest, the appellant must show actual prejudice. *O'Hara*, 167 Wn.2d at 99. Actual prejudice requires a plausible showing that " 'the asserted error had practical and identifiable consequences in the trial of the case.' " *State v. A.M.*, 194 Wn.2d 33, 38, 448 P.3d 35 (2019) (quoting *O'Hara*, 167 Wn.2d at 99). This court finds actual prejudice only if the error is "so obvious on the record that the error warrants appellate review." *O'Hara*, 167 Wn.2d at 99-100.

### B. APPLICATION

Here, JB alleges he did not receive adequate notice of an alternative ground that the State relied on when seeking to extend his term of involuntary commitment, resulting in a violation of

his right to due process under the Fourteenth Amendment of the U.S. Constitution and Article I, Section 3 of the Washington Constitution.

It is error to rely on a basis for involuntary commitment that was not pled in the petition. *See In re Det. of Cross*, 99 Wn.2d 373, 382-83, 662 P.2d 828 (1983). Involuntary commitment is a " 'massive curtailment of liberty,' " which the State cannot constitutionally carry out without due process of law. *In re Det. of LaBelle*, 107 Wn.2d 196, 201, 728 P.2d 138 (1986) (quoting *Humphrey v. Cady*, 405 U.S. 504, 509, 92 S. Ct. 1048, 31 L. Ed. 2d 394 (1972)); U.S. CONST. amend. XIV; CONST. art. I, § 3. Thus, a respondent in an involuntary commitment proceeding, like a criminal defendant, is constitutionally entitled to adequate notice of the proposed basis for detention. *LaBelle*, 107 Wn.2d at 201; *see also Cross*, 99 Wash.2d at 382-83 (interpreting the involuntary commitment statute to require notice of "all alternative grounds on which revocation or modification is sought" in order to avoid giving the statute an unconstitutional construction). Because adequate notice is a constitutional requirement for involuntary commitment proceedings, the error JB identifies is constitutional in nature.

However, JB must not only show that the error in question is constitutional in nature, he must also show that the error is manifest. *O'Hara*, 167 Wn.2d at 98. That is, JB must show the error resulted in actual prejudice in the form of " 'practical and identifiable consequences in the trial of the case.' " *A.M.*, 194 Wn.2d at 38 (quoting *O'Hara*, 167 Wn.2d at 99).

Here, the record does not support a finding that JB was prejudiced. JB points to only one consequence of the alleged error: that the jury "was obviously confused about what it had to find." Br. of Appellant at 19. JB infers this confusion from the question the jury asked during

deliberations. That question was, "Is it true that answering no to [question] 2[, which asked whether JB was gravely disabled,] means that the respondent returns to W. State?" CP at 99.

Although the jury's question reflects some confusion, because answering "no" to that question would not prompt JB's return to Western State Hospital, JB has not shown how the confusion is traceable to the alternative ground that was included in instruction 3. The jury was confused about the consequences of a particular finding, *i.e.* what would happen to JB if he was not found gravely disabled, not about whether it could instead find that he was "in need of assisted outpatient behavioral health treatment." *Id.* at 88. Nor has JB shown that the confusion caused him any prejudice. He does not, for example, argue that if the jury understood the consequences of finding him not gravely disabled, it would have reached a different verdict.

Moreover, there is no manifest error because the petitioners did not argue the alternate ground, or even allude to it, at trial. True, petitioners presented testimony about JB's behavioral health treatments. But his treatment was relevant to the definition of "[g]ravely disabled," which includes the jury's determination of whether JB "is not receiving or would not receive, if released, such care as is essential for his or her health or safety." *Id.* at 91. JB's treatment was also relevant to the jury's determination of whether JB's best interest would be served by remaining at Western State Hospital or by being transferred to a less restrictive form of treatment. Thus, there is no deficiency in notice that was "so obvious on the record that the error warrants appellate review." *O'Hara*, 167 Wn.2d at 99-100.

Finally, there is no prejudice because the jury could not have relied on the alternate ground to reach the outcome it did. Whereas the alternate ground refers to a need for *outpatient* treatment, the jury found that JB should receive *inpatient* treatment for 180 days. Even if the jury believed it

had the option of finding the alternate ground, it ultimately determined that JB was gravely disabled and should return to Western State Hospital for inpatient treatment. This shows that the presence of the alternate ground on the jury instruction did not prejudice JB.

Therefore, JB fails to show that he was prejudiced by the constitutional error he alleges, and thus has not met his burden of showing that the error was manifest. We decline to reach the merits of JB's appeal because the issue was not raised at trial, and JB does not allege a manifest constitutional error within the meaning of RAP 2.5(a)(3).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, A.C.J.

We concur:

LEE, J.

VELJACIC, J.