IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Dependency of: | ) | No. 39591-0-III |
| | ) | (consolidated with |
| X.T.J. and X.M.J. | ) | No. 39592-8-III, |
| | ) | No. 39634-7-III, |
| | ) | No. 39635-5-III, |
| | ) | No. 39729-7-III, |
| | ) | No. 39730-1-III) |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

KORSMO, J.P.T. [1] — This court initially granted discretionary review of this admittedly moot action in order to consider the question of a trial court's authority to authorize entry into a family home for child welfare purposes. A more thorough review of the record has convinced us that the atypical fact pattern of this case and changes in controlling law mean it is not the appropriate vehicle for resolving the issue. Accordingly, we dismiss this moot appeal.

*BACKGROUND*

The case has its genesis in a series of child welfare complaints in early 2023 concerning two children, XTJ and XMJ, who were members of the Cowlitz Indian Tribe. The Department of Children, Youth, and Families (DCYF) became involved when the two infants, then aged 2 and 1, were taken to the hospital on January 23, 2023, by their

---

[1] Kevin M. Korsmo, a retired judge of the Washington State Court of Appeals, is serving as a judge pro tempore of this court pursuant to RCW 2.06.150(1).

mother and grandmother after the older child, XTJ, ingested illegal drugs at the grandmother's home where the family was living. The child tested positive for cocaine and methamphetamine.

A Yakima County Superior Court commissioner granted an ex parte order to take the two children into protective custody. DCYF filed a dependency petition. A shelter care hearing was held and the commissioner ordered a return of the children to their mother in accordance with the standards of the federal Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963. The return order also prohibited the children from having contact with the grandmother or visiting her residence. The mother and children moved in with the mother's sister. The dependency petition was set for fact-finding. The order also authorized DCYF to make one child welfare visit at the mother's home prior to the case status conference.

On March 23, 2023, XTJ was put to bed after eating lunch because he was tired. His mother soon thereafter noted that his lips were blue and sought medical assistance. Emergency medical technicians placed XTJ on a ventilator and ultimately transported him to Seattle Children's Hospital. XTJ was not expected to survive, so the mother authorized the removal of life support. The child died on March 27, 2023.

In light of XTJ's death, DCYF obtained an order on March 30, 2023, placing XMJ

2

in the custody of the mother's sister and allowing visitation by the mother. By the time

of a hearing on April 4, 2023, an autopsy had determined that XTJ had died from a heart

attack due to the same inherited health condition that had also killed his father. The

juvenile court commissioner returned XMJ to the custody of the mother. In anticipation

of the dependency trial occurring in June, the court's written order filed April 10, 2023,

continued the restriction against living at the grandmother's address and included the

following provision at issue in this case:

> 3.2    Safety Visits. [DCYF] may not conduct more than one health &
> safety check on the child every 30 days. [DCYF] may only talk to and
> interact with the child during the health and safety check. Health and safety
> checks may be done in the home or at day care. Health & safety checks in
> the home may only take place with the Cowlitz Indian Tribe's social worker
> or OPD [Office of Public Defense] social worker present. [DCYF] must
> pre-arrange the physical presence of either social worker.

Clerk's Papers at 129 (boldface omitted).[2]

Four days after the entry of the order, the juvenile court granted a motion

by DCYF to dismiss the dependency action concerning XTJ.[3] The mother then sought

discretionary review of five orders entered by the juvenile court, and the Tribe sought

---

[2] This order referenced "day care" because the mother had expressed the desire to enroll the child in day care, but had not yet done so.

[3] The dependency action involving XMJ was also dismissed due to the child's death and is not at issue in this action.

review of three of those orders. Our commissioner denied discretionary review because the case was moot. A panel of this court granted a motion to modify the commissioner's ruling solely as to the home visitation provision of the April 10 order.

*ANALYSIS*

An appeal is moot if an appellate court cannot provide effective relief. *In re Det. of LaBelle,* 107 Wn.2d 196, 200, 728 P.2d 138 (1986). Nonetheless, an appellate court will consider a moot case when it is in the public interest to do so. *Id.* Factors to be considered include whether or not the matter is of a private or public nature, the need for guidance to public officials, and whether the problem is likely to recur. *In re Det. of Cross,* 99 Wn.2d 373, 377, 662 P.2d 828 (1983).

DCYF has competing obligations both to protect an at-risk child and to keep families together. ICWA adds the additional obligation to act in the best interests of an Indian child, 25 U.S.C. § 1902. In addition, the Washington State Indian Child Welfare Act (WICWA), chapter 13.38 RCW, requires placement decisions to consider both the best interests of the child and their tribe. RCW 13.38.030. ICWA and WICWA, as recognized by the juvenile court, therefore militate against removal of an Indian child from the home.

The adoption by the Washington Legislature of the Keeping Families Together Act

revised the obligations concerning the initial decision to remove children from their families. LAWS OF 2021, ch. 211. The act took effect July 1, 2023, ten weeks after the order at issue in this case and four months after the initial order to take the children into protective custody. LAWS OF 2021, ch. 211, § 12. Thus, to the extent that the question presented on review involves statutory obligations of DCYF, an opinion on the merits would necessarily address laws or regulations that are no longer in effect. The Tribe advised us that a similar factual pattern arose under current law in two cases pending in Division Two of this court. Reply to State's Br. at 3 (citing to *In re Welfare of P.R.L.M.*, No. 59673-3-II, linked with *In re Welfare of B.G.J.M.*, No. 56983-1-II).[4] Thus, to the extent that this issue may arise in the future, we are confident that resolution of the argument under the new statute is a far better solution than offering an advisory opinion about the former law.

While we dismiss this review for that reason, we do want to encourage the petitioners to better frame their trial court arguments should this problem arise again. The unstated premise of the petitioners' arguments is that a parent's privacy right in their

---

[4] On September 20, 2024, a commissioner of Division Two of this court determined that the cases were moot and denied discretionary review. A panel of the court later declined to modify the commissioner's ruling and certificates of finality were issued on January 17, 2025.

home trumps the ability of the court and DCYF to ensure an endangered child is safe by

visiting the home. Argument and evidence for and against such a proposition would go

a long way toward developing a proper record to allow courts to determine the correct

resolution to the issue.[5] Although constitutional issues may be raised for the first time

on appeal, having an adequate record to properly address the issue is critical for appellate

review. *E.g., State v. WWJ Corp.*, 138 Wn.2d 595, 602, 980 P.2d 1257 (1999) (without

adequate record, alleged constitutional error is not "manifest" within the meaning of

RAP 2.5(a)).

The appeal is dismissed.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Korsmo, J.P.T.

WE CONCUR:

_____        _____
Lawrence-Berrey, C.J.                                    Cooney, J.

---

[5] These concerns may also inform a juvenile court's decision on placement. Return of a child to a dangerous environment without oversight could be a significant factor in the placement decision.